UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
-------------------------------------------------------------- X
Ron Barack, et al.,

                                    Plaintiffs,        **ORDER**

             -against-                     Case No. 09-cv-565

American Honda Motor Co., Inc., et al.,

                                 Defendants,
-------------------------------------------------------------- X

      Before the Court are Defendants' Motion in Limine to Preclude the Testimony and Records of Psychologist Sabrina Breed, Ph.D. at trial [Rec. Doc. 164-15] and Plaintiffs' Opposition thereto [Rec. Doc. 176]. Defendants seek to preclude Dr. Breed's testimony and the introduction of her records of her treatment of Mr. Barack. Plaintiffs' seek to have Dr. Breed testify as Plaintiff Ron Barack's treating physician.

## I.  APPLICABLE LAW

### A. Classification of the Treating Physician

      The case law surrounding the question of whether a treating physician is an expert or a lay witness is somewhat unsettled in this Circuit. After a review of Second Circuit jurisprudence, the Court concludes: (1) that each case turns on the particular facts and circumstances presented to it; and (2) that a treating physician fits the definition of an expert who may give opinion testimony under Federal Rule of Evidence 702, but a treating physician need not be explicitly designated as an expert witness under the Federal Rules of Civil Procedure. *See, e.g., Reilly v. Revlon, Inc.*, 2009 WL 2900252, at *3 (S.D.N.Y. Sept. 9, 2009) ("Treating physicians do not need to be designated as

experts in order to testify.  Furthermore, treating physicians, like all other fact witnesses, may give

opinion testimony about plaintiff's condition and emotional damages pursuant to Fed. R. Ev. 702.").

### B.  Disclosure Requirements for the Treating Physician Under the F.R.C.P.

As a treating physician can give expert testimony in accordance with Rule 702, under

Federal Rule of Civil Procedure 26(a)(2)(A), "a party must disclose to the other parties the identity

of any [treating physician] it may use at trial to present evidence under [Rule 702]." *See* Fed. R. Civ.

P. 26(a)(2)(A).  The party seeking to use the treating physician does not, however, need to provide a

written expert report under Rule 26(a)(2)(B) because treating physicians are not "retained or

specially employed to provide expert testimony in the case." *See* Fed. R. Civ. P. 26(a)(2)(B);

*Spencer v. Int'l Shoppes, Inc.*, 2011 WL 4383046, at *2 (E.D.N.Y. Sept. 20, 2011); *Badr v. Liberty

Mut. Group, Inc.*, 2007 WL 2904210, at *4 (D. Conn. Sept. 28, 2007); *Fanning v. Target Corp.*,

2006 WL 298811, at *2 (S.D.N.Y. Feb. 6, 2006); *Lamere v. N.Y. State Office for the Aging*, 2004

WL 1592669, at *1 (N.D.N.Y. July 14, 2004); *see also* Fed. R. Civ. P. 26(a) Adv. Comm. Notes,

2010 amends. ("A witness who is not required to provide a report under Rule 26(a)(2)(B) may both

testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703 or 705.

Frequent examples include physicians or other health care professionals . . . .").

Although not required to provide a written expert report under Rule 26(a)(2)(B), a party

seeking to use a treating physician must disclose more than just the identity of the treating

physician.  "[I]f the witness is not required to provide a written report [under Rule 26(a)(2)(B), the

witness's] disclosure must state: (i) the subject matter on which the witness is expected to present

evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and

opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).  Rule 26(a)(2)(C)

therefore clearly requires treating physicians to, at a minimum, produce and disclose "summaries" of the facts and opinions to which the physician expects to testify. *See, e.g., Millenium Pipeline Co., L.L.C. v. Certain Permanent & Temp. Easements*, 2013 WL 310403, at *3 (W.D.N.Y. Jan. 25, 2013); *Eslin v. Hous. Auth. of Mansfield*, 2012 WL 3090976, at *5 n.3 (D. Conn. July 13, 2012); *Ziegenfus v. John Veriha Trucking*, 2012 WL 1075841, at *7 (S.D.N.Y. March 28, 2012). The Rule 26(a)(2)(C) summary is "considerably less extensive than the [written expert] report required by Rule 26(a)(2)(B)." Fed. R. Civ. P. 26(a) Adv. Comm. Notes, 2010 amends.  "Although less is required in a disclosure [for witnesses under Rule 26(a)(2)(C)] than of those covered by Rule 26(a)(2)(B) . . . a mere list of names, accompanied by three-word descriptions of the subject matter of their testimony, is plainly not enough." *Millenium Pipeline Co.,* 2013 WL 310403, at *3.  Failure to disclose the information laid out by Rule 26(a)(2)(C) opens the party to the imposition of sanctions pursuant to Rule 37(c)(1). *Ziegenfus*, 2012 WL 1075841, at *5.

### C.  The Permissible Scope of the Treating Physician's Testimony at Trial

Treating physicians are limited in the testimony they may present at trial because, as set out above, they are not required to make a written expert report disclosure pursuant to Rule 26(a)(2)(B). "[W]ithout properly declaring a treating physician as an expert witness, the physician's testimony is limited to certain parameters." *Motta v. First Unum Life Ins. Co.*, 2011 WL 4374544, at *3 (E.D.N.Y. Sept. 19, 2011).  "[T]he key to what a treating physician can testify to without being declared an expert is based on *his personal knowledge from consultation, examination and treatment of the Plaintiff, 'not from information acquired from outside sources.*'" *Id.* (emphasis added) (internal citation omitted).  Thus, treating physicians "cannot be limited to solely factual testimony," *id.*, and they "may testify as to opinions formed during their treatment, *including*

3

*causation,* severity, disability, permanency and future impairments." *Williams v. Regus Mgmt. Group, LLC*, 2012 WL 1711378, at *3 (S.D.N.Y. May 11, 2012) (emphasis in original) (internal citation omitted).  Therefore, treating physicians are "permitted to offer opinion testimony on diagnosis, treatment, prognosis and causation, but *solely* as to the information he/she has acquired through observation of the Plaintiff in his/her role as a treating physician limited to the facts in Plaintiff's course of treatment." *Spencer*, 2011 WL 4383046, at *4 (emphasis in original).

"[A] treating physician . . . who has not complied with the reporting requirement of Rule 26(a)(2)(B) . . . should not be permitted to render opinions outside the course of treatment and beyond the reasonable reading of the medical records." *Lamere v. N.Y. State Office for the Aging*, 223 F.R.D. 85, 89 (N.D.N.Y. 2004).  "[I]f a treating physician is called upon to review . . . [any] materials outside the four corners of her medical records and to opine greater than what is reflected in those medical records, we then would be of the view that such treating physician now falls with[in] the parameters" of Rule 26(a)(2)(B) and a written expert report would be required. *Id.* at 89 n.4.  Thus, "the treating physician may not introduce information provided by other physicians to whom the Plaintiff may have been referred nor may the doctor present any medical reports received from other physicians regarding the Plaintiff or opine on any information provided by another doctor." *Spencer*, 2011 WL 4383046, at *4.  A treating physician who was not designated as an expert witness and failed to prepare the necessary expert report is prohibited from testifying "concerning opinions not gleaned from his own diagnoses and treatment of the plaintiff." *Franz v. New England Disposal Technologies, Inc.*, 2011 WL 5443856, at *3 (W.D.N.Y. Nov. 9, 2011).

## II. ANALYSIS

This is the second time the Defendants have moved to prohibit expert testimony based on Plaintiffs' failure to follow discovery deadlines.  As the Court observed in its April 10, 2010 Order [Rec. Doc. 183], the sequence of events leading to the Defendant's Motion leaves the Court with the definite and distinct impression that the Plaintiffs are attempting to circumvent two previous orders from Chief Judge Alvin W. Thompson, the referring Judge, prohibiting Dr. Breed from testifying.

The deadline to disclose all experts was January 18, 2011 [*see* Rec. Doc. 118, 122]. Plaintiffs timely complied by disclosing certain damages experts on January 14, but this disclosure did not include Dr. Breed [*see* Rec. Doc. 164-15, Exhibit A].  Plaintiffs then moved for leave to disclose additional damages experts on March 15, 2011, nearly two months after the deadline passed [*see* Rec. Doc. 142].  Without any Court-granted leave to disclose additional damages experts, Plaintiffs sent the Defendants via email a report for "plaintiffs' psychological expert Sabrina Breed" on June 7, 2011 [*see* Rec. Doc. 152-3].  This appears to be the first time Plaintiffs disclosed Dr. Breed's identity to the Defendants in any capacity [*see* Rec. Doc. 164-15, Exhibit E]. Plaintiffs did not disclose to Defendants in the June 7 email that Dr. Breed had met Mr. Barack or that she was under consideration to be his treating physician.  On June 23, 2011, Chief Judge Thompson denied the Plaintiffs' motion for leave to disclose additional damages experts [*see* Rec. Doc. 149], and on June 28, the Plaintiffs moved for reconsideration [*see* Rec. Doc. 150].  As late as June 28, 2011, Plaintiffs' motion for reconsideration listed Dr. Breed as one of four proposed damages experts [*see* Rec. Doc. 150-3].

By July 7, 2011, it appears that Plaintiffs decided to change course as to Dr. Breed: they determined to "formally identify her as a new treater for Mr. Barack," notifying Defendants of this

5

new identification by email [*see* Rec. Doc. 151-1]. The deadline for the Defendants to disclose all of their damages experts was July 14, 2011 [*see* Rec. Doc. 148].  Seven days after that deadline, and only one day before the July 22, 2011 deadline for all fact discovery to be completed, the Plaintiffs formally disclosed, via a one paragraph supplemental response to one of Defendants' interrogatories, that Dr. Breed was now Mr. Barack's treating psychologist [*see* Rec. Doc. 164-15, Exhibit B].  The Plaintiffs' July 21 interrogatory response noted that Dr. Breed had been evaluating Mr. Barack since at least February 2011 "at the request of counsel." Plaintiffs offered no explanation for why Dr. Breed's formal identification as a treating psychologist was not made prior to the Defendants' July 14 discovery deadline if the Plaintiffs had already determined that she was to serve as a treating psychologist rather than as a damages expert.

Although Dr. Breed met Mr. Barack in contemplation of treatment as early as February 2011, Plaintiffs waited over five months to *even informally* disclose Dr. Breed as his treating physician.  In the meantime, Plaintiffs informed Defendants at least twice—and as late as the end of June 2011—that they intended to use Dr. Breed as a damages expert, pending Court approval.  The *formal* disclosure of Dr. Breed came after Defendants' expert disclosure deadline passed.  More importantly, it came just one day before all discovery was to close.[1]  Although the Plaintiffs state in their Opposition that they would address the disconcerting nature of this midnight disclosure, their

---

[1] More troubling still, the formal disclosure was woefully inadequate.  The July 21 interrogatory response indicated that Dr. Breed's treatment findings were detailed "in her report that has been provided"—i.e., the expert report that Plaintiffs' counsel improperly sent, without Court leave, to defense counsel in June and which was clearly intended to be a Rule 26(a)(2)(B) expert report.  Additionally, Plaintiffs did not send to Defendants Dr. Breed's treatment records in their July disclosure; rather, those treatment records were turned over on September 12, 2011 [*see* Rec. Doc. 164-15, Exhibit C], almost two full months after Defendants had to disclose all of their experts on damages and after fact discovery had closed.  As Defendants point out, Mr. Barack had signed an Authorization for the release of his health records on March 30, 2011, allowing Dr. Breed in particular to release his medical records to defense counsel at that time.

only explanation is that they were "in the midst" of arguing a motion for reconsideration during the month of July 2011, which appears to have produced, in total, a six-page reply memorandum filed with the Court. After reviewing this sequence of events, the Court is left with the definite and distinct impression that Plaintiffs are trying to circumvent two of Chief Judge Thompson's rulings: with the July 22, 2011 discovery deadlines looming, and with no indication that the Court would grant their motion for reconsideration as to Dr. Breed, the Plaintiffs made a last-ditch effort to use her as a witness at trial and disclosed Dr. Breed, in threadbare fashion, as a treating doctor.

In the most technical of senses, however, Dr. Breed *was* disclosed prior to the relevant fact discovery deadline. A treating physician, though testifying like an expert for purposes of the Federal Rules of Evidence, is not an "expert" so far as the discovery disclosure deadlines governed by the Federal Rules of Civil Procedure are concerned. As such, the July 21 disclosure of her identity as a treating physician was timely by one day.

Although the disclosure of her *identity* was timely, the Plaintiffs' interrogatory response [Rec. Doc. 164-15, Exhibit B] entirely fails to meet the standard of Rule 26(a)(2)(C). While the response arguably includes "the subject matter on which the witness is expected to present evidence"—Mr. Barack's post-traumatic stress disorder, his depressive disorder, and Dr. Breed's course of treatment with him up to that date— the response in no way includes a "summary of the facts and opinions to which the witness is expected to testify." Dr. Breed's "expert" report, which the Plaintiffs' interrogatory response noted had already "been provided," is a recycled version of a full Rule 26(a)(2)(B) expert report that the Court previously denied as untimely.[2]  No argument can

---

[2] The Court observed that Plaintiffs used a similar tactic in trying to use Dr. Breed's previously-disclosed Rule 26(a)(2)(B) expert report as a rebuttal report without even attempting to modify the report to conform the definition of a rebuttal report. [Rec. Doc. 183].

be made that the previously submitted expert report is a "summary" as the term is used in Rule 26(a)(2)(C).  Under the plain language of the Federal Rules, the two types of reports are not one and the same.

The Court concludes that Plaintiffs' failure to disclose a summary for Dr. Breed under Rule 26(a)(2)(C) is a violation of Rule 26(a).  For this discovery violation, the Court can consider all of the available sanctions under Rule 37(c)(1) as an exercise of its broad discretion. *See Ebbert v. Nassau County*, 2008 WL 4443238, at *14 (E.D.N.Y. Sept. 26, 2008).  The Court also has significant concerns that Plaintiffs' course of conduct and subsequent last-minute disclosure "essentially sandbagged" Defendants and is "precisely the type of conduct that Rule 37(c)(1) is meant to prevent." *See Pal v. N.Y. Univ.*, 2008 WL 2627614, at *5 (S.D.N.Y. June 30, 2008). Because of the Court's significant concerns regarding Plaintiffs' counsel's actions set out above, the Court will determine the propriety of sanctions, including the potential prohibition of Dr. Breed's trial testimony in the capacity of Mr. Barack's treating physician, after the hearing that will be conducted on July 24, 2013 and, if necessary, July 25, 2013.[3]

Dr. Breed's testimony, if allowed, will be limited to the specific topics outlined by the cited case law.  This may include Breed's diagnosis, her prognosis, the extent of Mr. Barack's disability, if any, as well as her view of the cause of Mr. Barack's medical condition.  This is a non-exhaustive list of examples.  The attorneys for the parties should read the cases cited herein so as not to run afoul of the Court's ruling.  The Court refers the attorneys to the cited jurisprudence for more

---

[3] For the factors the Court will consider in determining whether to preclude Dr. Breed's testimony, see *Scientific Components Corp.*, 2008 WL 4911440, at *4 (E.D.N.Y. Nov. 13, 2008).

detailed guidelines as to what is permissible and what is not permissible for a treating physician to testify to in the absence of an expert report under Rule 26(a)(2)(B).

Other parts of Dr. Breed's potential trial testimony will be prohibited in any event. This includes testimony as to medical matters unrelated to her actual care and treatment, testimony regarding Mr. Barack's previous treatment, and any opinions not derived from Dr. Breed's personal knowledge of Mr. Barack's course of treatment, that were developed or acquired in anticipation of litigation, or that she learned specifically in preparation for her trial testimony after the date of the entry of this Order. This is a non-exhaustive list of examples, and the Court again cautions the attorneys for the parties to review the jurisprudence cited herein so as not to run afoul of this ruling.

If the Court allows Dr. Breed to testify as Mr. Barack's treating physician, she will not be permitted to use her expert report sent to Defendants on June 7, 2011 during her testimony in Plaintiffs' case in chief,[4] as that report is not a summary from a treating physician as detailed by Rule 26(a)(2)(C), but is instead an untimely expert disclosure under Rule 26(a)(2)(B) already twice rejected by Chief Judge Thompson. Based on the foregoing, it is

**ORDERED** that Defendants' Motion in Limine [Rec. Doc. 164-15] is **TAKEN UNDER ADVISEMENT IN PART** in that the Court will consider the imposition of sanctions following the hearing the Court will conduct on July 24, 2013, and if necessary, July 25, 2013. [Rec. Doc. 182]. If the Court permits Dr. Breed testify at trial in the capacity of Mr. Barack's treating physician, she may do so only in accordance with the conditions set out herein, which shall be strictly enforced by the Court at trial. It is further

---

[4] The Court may permit Dr. Breed to refer to certain stipulated portions of the report in rebuttal to Defendants' experts' testimony pursuant to the Court's April 10, 2013 Order. [Rec. Doc. 183].

**ORDERED** that Defendants' Motion in Limine [Rec. Doc. 164-15] is **GRANTED IN PART** in that Plaintiffs will be prohibited from introducing Dr. Breed's June 7, 2011 report in conjunction with Dr. Breed's testimony as Mr. Barack's treating physician.  Only those portions of the report stipulated to by the attorneys will be allowed to be referred to by Dr. Breed, and then only in her capacity as a rebuttal witness. [Rec. Doc. 183].  It is further

**ORDERED** that Plaintiffs must submit a summary in accordance with Rule 26(a)(2)(C) **within fourteen (14)  days of the date of the entry of this Order, inclusive of weekends,** by email to defense counsel and to the Court, through its law clerk Brendan Clegg, brendan_clegg@ lawd.uscourts.gov.  It is further

**ORDERED** that if the Defendants wish to object to the material in the summary on the basis that it is improper under the terms of this Order**,** they may do so by motion filed via ECF **within seven (7) days** of the receipt of Plaintiffs' summary.  The Defendants' objection is to outline with specificity, using pinpoint citations to the proposed summary and the relevant jurisprudence on which they rely, those portions that do not strictly conform with this Order.  Any response from the Plaintiffs in support of the objected-to portions of Dr. Breed's Rule 26(a)(2)(C) summary must be filed via ECF in the same format as Defendants' objection within **seven (7) days** of the filing of the Defendants' objection.  The attorneys are not to include objections to, or requests for reconsideration of, this Order in the filings they are authorized to make pursuant to this Order.  It is further

**ORDERED** that Dr. Breed is to be notified **immediately** upon Plaintiffs' counsel's receipt of this Order that her presence will be required at the hearing that the Court will conduct on July 24, 2013, and July 25, 2013 if necessary, and that she must provide her Rule 26(a)(2)(C) summary to

Plaintiffs' counsel so that it may be emailed to defense counsel within fourteen (14) days of the date of the entry of this Order.  Due to the history of this litigation, **NO REQUEST FOR AN EXTENSION** of the deadlines set for Dr. Breed's summary to be provided to defense counsel and to the Court will be looked upon favorably nor will same be granted short of a force majeure.

      **SO ORDERED.**

Tucker L. Melançon
United States District Judge

April 18, 2013
Bridgeport, CT