UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| RON BARACK and | ) | |
| DONNA MOORE BARACK, | ) | |
| *Plaintiffs*, | ) | 09-cv-00565 (TLM) |
| | ) | |
| vs. | ) | |
| | ) | |
| AMERICAN HONDA MOTOR | ) | |
| COMPANY, INC, et al.. | ) | |
| | ) | |
| *Defendants.* | ) | May 7, 2013 |

**AFFIRMATION IN OPPOSITION TO DEFENDANT'S RENEWED MOTION TO
PRECLUDE TREATING PHYSICIAN SABRINA BREED**

NOAH H. KUSHLEFSKY affirms to the following under penalty of perjury:

1.      I am a member of the law firm of Kreindler & Kreindler LLP and I am familiar

with the facts and circumstances of this case.  I submit this affirmation in Opposition to

Defendants Renewed Motion to Preclude the Testimony and Records of Sabrina Breed. Ph.D. as

a treating psychotherapist.

2.      The Court is currently considering whether Dr. Breed will be permitted to testify

as a rebuttal expert, as a treating physician, or whether she will be precluded entirely from

testifying to plaintiff Ron Barack's psychological injuries as a result of the subject accident.

3.      On April 10, 2013, the Court ordered the plaintiffs to submit, *inter alia*, a redacted

expert report of Dr. Breed, along with an explanation of specific opinions she has offered which

rebut the proposed testimony of defense experts.  Plaintiffs complied with this Order and

provided the Court with this submission on April 24, 2013 ("April 24 Submission").  Included in

plaintiffs' April 24 Submission was information concerning the treatment that Ron Barack

received from Dr. Breed both before and after the "Treatment Report" that she authored was served on the defendants.

4. Admittedly, plaintiffs failed to specifically comply with the Court's April 18, 2013 Order to submit a summary of Dr. Breed's testimony in accordance with Fed. R. Civ. P. 26(a)(2)(C). I regret this lapse and apologize to the Court and defense counsel. Plaintiffs have now complied with the Court's Order, see plaintiffs' Rule 26 disclosure attached as Exhibit A.

5. Though I understand that excuses may be futile, I would like to emphasize that the information required by the April 18 Order had already been provided to defendant Honda on several occasions and has been included in the several motions previously filed with respect to Dr. Breed's testimony.

6. There is no prejudice to the defendants as a result of this lapse. Dr. Breed's observations, diagnosis, treatment plan and prognosis were provided to the defendants nearly two years ago in the Treatment Report, which is attached as Exhibit B.

7. Though Mr. Barack was sent to Dr. Breed for an expert evaluation, with no encouragement or prompting from any lawyer Dr. Breed began treating him because he needed treatment.  He was treated by Dr. Breed on 2/11/11, 2/28/11, 3/14/11, 3/21/11, 5/2/11. 5/9/11, 5/23/11 and 6/1/11 before her Treatment Report was written served.  She continued to see him on 6/6/11, 8/22/11, 9/5/11, 10/24/11, 11/7/11, 11/28/11 and 12/5/11 before he started treating with another therapist. Dr. Breed's records are attached as Exhibit C.

8. Honda has long been aware of these treatment dates.  On July 21, 2011 plaintiffs amended their Interrogatory Responses to inform defendants that Ron Barack had become a patient of Dr. Breed's, provided an authorization to obtain her records, and offered her for deposition as a treating psychotherapist, attached as Exhibit D.

2

9.      Notwithstanding the error in failing to comply with the Court's Order, Honda has already received all of the information that would have been provided in a Rule 26(a)(2)(C) submission.  The information that would have comprised the Rule 26(a)(2)(C) submission was included in the April 24 Submission, where Plaintiffs stated: (1) the general subject matter on which Dr. Breed will testify (psychological treatment and therapy of Mr. Barack); (2) Dr. Breed's diagnoses of Mr. Barack; and (3) the factual basis for arriving at such diagnoses.

10.      Plaintiffs also disclosed the nature of the ongoing treatment for post traumatic stress disorder and depression and described this as the area of her testimony when we listed her as a trial witness in the Joint Pretrial Order filed December 17, 2012.

11.      As is detailed in the treatment report provided to defendant years ago, Dr. Breed diagnosed Ron Barack with PTSD and major depressive disorder as a result of the accident, which affects his daily living, his interpersonal relationships and his ability to work.  In her treatment report she provides short term, medium term and long term psychotherapy goals and a treatment plan that includes psychotherapy and cognitive behavioral therapy.

12.      Because Dr. Breed was treating Mr. Barack, she did not specifically write an expert report, but a treatment report with all of the information required by Rule 26(a)(2)(C). Honda has been in possession of that report and has not been prejudiced in any way by my oversight in failing to comply with the April 18 Order.   The failure to separately provide information which was already provided should not be the basis for precluding relevant testimony from a witness well known to Honda, with testimony well known to the defendants.

Dated: New York, NY
May 6, 2013                                              _____/s/_____
                                                                   Noah H. Kushlefsky

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true copy of the foregoing ***PLAINTIFFS' OPPOSITION TO DEFENDANT'S RENEWED MOTION TO PRECLUDE TREATING PHYSICIAN SABRINA BREED*** was served via electronic mail and the Court's ECF system this 7th day of May, 2013 upon counsel of record:


       ___/s/<u>Noah Kushlefsky</u>_____
Noah Kushlefsky, Esq. (Bar ID: phv04526)

4

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| RON BARACK and | ) | |
| DONNA MOORE BARACK, | ) | |
| | ) | |
| *Plaintiffs*, | ) | 09-cv-00565 (TLM) |
| | ) | |
| vs. | ) | |
| | ) | |
| AMERICAN HONDA MOTOR | ) | |
| COMPANY, INC., HONDA | ) | |
| MOTOR COMPANY, LTD., and | ) | |
| HONDA MANUFACTURING OF | ) | |
| ALABAMA, | ) | |
| | ) | |
| *Defendants*. | ) | May 7, 2013 |

## PLAINTIFFS' RULE 26(a)(2)(C) EXPERT DISCLOSURE

Pursuant to Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure and the Court's

April 18, 2013 Order, Plaintiffs Ron Barack and Donna Moore Barack, by and through

undersigned counsel, hereby make the following treating physician disclosure:

**Sabrina Breed, Ph.D.**, Clinical Psychologist
210 West 70th Street, Suite 201
New York, NY 10023

Plaintiffs anticipate calling Dr. Breed at trial as the treating physician of Plaintiff Ron Barack. Dr.

Breed will testify consistent with her treatment report of June 7, 2011 which was previously served. Dr.

Breed met with and treated Mr. Barack on fourteen occasions, beginning on February 21, 2011 and

ending on December 5, 2011 when he sought treatment from another psychologist. Dr. Breed diagnosed

Mr. Barack with post traumatic stress disorder and major depressive disorder as a result of the accident.

Dr. Breed will testify to the facts and information learned during these treatment sessions that lead to her

diagnoses, including the bases for her diagnoses: Mr. Barack's constant pain, major depression, poor

concentration, poor memory, anxiety when around others, and his anxiety when traveling. Dr. Breed will

also testify to a treatment plan, Mr. Barack's prognosis and her determination that Mr. Barack is not a

suitable candidate for employment.

Defendants were previously provided Dr. Breed's treating physician's report and her curriculum

vitae.

Dated: New York, New York
        May 7, 2013

Respectfully submitted,

KREINDLER & KREINDLER, LLP

By:     _____/s/_____
        Noah H. Kushlefsky, Esq. (Bar ID: phv04526)
        Andrew J. Maloney (Bar No. CT15639)
        750 Third Avenue
        New York, New York 10017
        nkushlefsky@kreindler.com
        amaloney@kreindler.com
        (212) 687-8181
        ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing ***PLAINTIFFS' RULE 26(a)(2)(C) EXPERT DISCLOSURE*** was served via the Court's ECF system, electronic mail and regular mail this 7th day of May, 2013 upon:

> James M. Campbell, Esq.
> Michelle I. Schaffer, Esq.
> Campbell Campbell Edwards & Conroy
> One Constitution Plaza, Third Floor
> Boston, MA 02129
> (617) 241-3000
> jcampbell@campbell-trial-lawyers.com
> mschaffer@campbell-trial-lawyers.com
> Attorneys for Defendants

> ___/s/<u>Noah Kushlefsky</u>_____
> Noah Kushlefsky, Esq. (Bar ID: phv04526)

# EXHIBIT B

**Sabrina Breed, Ph.D.**
**Clinical Psychologist**

210 West 70th Street, Suite 201                    NYS Licence #015001
New York, NY 10023                                 Tax ID # 01 0752649
(917) 207-9612

# Psychological Treatment Report

**Patient's Name:**       Ron Barack

**Date of Birth:**        February 25th, 1952

**Diagnosis:**

|  |  |
|---|---|
| **Axis I:** | Post-Traumatic Stress Disorder (309.81), chronic |
|  | Major Depressive Disorder, Single Episode, Severe without Psychotic Features (296.23) |
| **Axis II:** | Deferred (799.9) |
| **Axis III:** | Multiple Injuries to the left hand, including: dorsal and palmar degloving of the hand; bone fracture; tendon injuries; multiple lacerations |
|  | Orthopedic injuries to left shoulder, elbow, hip, knee, and back |
| **Axis IV:** | Problems with primary support network |
|  | Inadequate social support |
|  | Unable to work |
| **Axis V:** | GAF = 31 |

**Date of Report:**       June 7th, 2011

**Records Reviewed:**
Operative Record, Norwalk Hospital, Harvey Bluestein, MD (3/20/2006)
Evaluation and Treatment Record, Robert. J. Strauch, MD (4/27/2006; 5/16/2006; 11/17/2006)
Evaluation, Michael Weinberger, MD (6/9/2006)
Evaluation, Hill Hastings, MD (6/19/2006)
Treatment Record, Hand Rehabilitation Center of Indiana, (6/12/2006 – 6/20/2006)
Deposition of Ron Barack (6/28/2010)
Deposition of Donna Moore Barack (8/11/2010)

**Reason for Referral:** Mr. Ron Barack, a 59-year-old man who sustained a degloving injury to his left (dominant) hand in the course of a motor vehicle accident in 2006, was referred for psychological treatment of his post-injury depression and post-traumatic stress disorder.

Psychological Treatment Report, Ron Barack, June 7, 2011

**Brief Medical and Psychosocial History:**  Mr. Barack became disabled on March 20th, 2006, when his left hand was severely injured in the course of a motor vehicle accident. Mr. Barack, who has full recall of his accident, reports that he was driving his car down a hill close to his home when his car started sliding to the right, eventually hitting the post and rail and flipping over onto the left side of the car.  Mr. Barack believes he must have lifted his hand to protect his head; the car window eventually broke, and his hand hit the road, sliding against the road as the car continued to move.  When the car came to a stop Mr. Barack reports instantly experiencing excruciating, "indescribable," pain in his hand; when he looked to see the source of the pain, he saw the degloving injury.  Mr. Barack has a clear and vivid memory of seeing his hand immediately after the injury, including seeing the damaged skin, the broken bone of his middle finger protruding through the skin, and the flesh on the inside of his hand (including severed tendons) where the skin had been removed.  The combination of the intense pain with the horror of seeing his severely damaged hand was highly traumatic.

Two women who observed the accident summoned the police, and when a police officer arrived on the scene Mr. Barack realized that the car engine was still running and turned it off.  He describes feeling trapped in the car, and having intense fear that the car would burst into flames.  Eventually the fire department arrived, and helped Mr. Barack out of the car.  When he emerged from the car, the EMT were there; Mr. Barack describes being very anxious about the care he was receiving at the scene of the accident and experiencing fear that the treatment of his hand could actually end up injuring it further. He was taken by ambulance to Norwalk hospital, where he underwent extensive surgery on the hand.  His operative records from the surgery (Harvey Bluestein, MD) describe multiple injuries to the hand, including dorsal and palmar degloving of the hand, bone fractures, tendon injuries, and multiple lacerations with embedded glass.  Mr. Barack stayed overnight in the hospital and was released the next day.  In addition to his hand, Mr. Barack reports experiencing injuries to his left hip, left elbow, left shoulder, left knee, and back.

Mr. Barack reports having full recall of the accident.  He does not believe he suffered a blow to his head during the accident.  He says that it is possible that he experienced a loss of consciousness at the scene for a few seconds.

Subsequent to the accident Mr. Barack had a few follow-up visits with the doctor who performed his surgery (Dr. Bluestein), and then sought follow-up treatment with Dr. Strauch of Columbia Presbyterian Hospital.  He was referred for intensive hand therapy at the Indiana Hand Center, where he participated in therapy for his hand and also had a consultation with Dr. Hastings, the resident surgeon. He also sought pain management through Dr. Weinberger of Columbia Presbyterian Hospital.  Mr. Barack reports that he was told by Dr. Strauch that in order to recover some functionality of the hand, he would require additional surgeries.  However, Mr. Barack reports that he declined additional surgeries, because he was told that a possible outcome of the surgery was that it could make the hand worse not better.

2

Mr. Barack has continued to experience severe and chronic pain since the accident. He describes the pain he experienced in the first few months after that accident as "excruciating" and unratable using a standard pain scale, particularly when he participated in the hand therapy.  Since then the pain has lessened, but remains very severe.  Mr. Barack describes experiencing several kinds of pain in his hand:  He describes experiencing a constant "electric pain – like a stream of pins and needles," which he describes as being an 8 on a scale of 1/10, improving to a 5-6 when he takes medication.  He also describes experiencing sensations of stabbing, shooting, and burning, and feeling as if his hand "is under pressure and is going to explode."  He describes these pains as being an 8 on a scale of 1/10, improving to a 5-6 with medication.  He describes pain in his forearm, "a shrinking pain, as if the tendons are being contracted, or pulled from both sides," which he also describes as an 8 on a scale of 1/10, improving to a 5-6 with medication.  His worst hand pain he describes as a "crushing pain, as if my hand is in a vice or press;" this pain comes and goes, but when it is present it is more severe, a 9 on a scale of 1/10, improving to a 5-6 with medication. He also reports that his hand gets very cold in winter, even when he wears gloves, and that his fingers often turn blue.  In addition to the pain in his hand, Mr. Barack describes experiencing pain in his left shoulder; his lower, middle and upper back; his left hip; his left knee; and sciatica pain radiating to his left leg.  He describes these pains as a constant 7-8 on a scale of 1/10, improving to a 6 with medication.  He also experiences pain in this right wrist, which he attributes to overuse of his healthy hand.  Mr. Barack describes himself as "never being pain free."  The pain significantly limits his sleep, as he finds it impossible to be comfortable, even when he tries to carefully position himself in the bed. It limits his mobility, as he experiences pain when walking, and keeps him from engaging in sports or exercise he used to enjoy.  In addition, it negatively and significantly impacts his mood, leaving him prone to irritability and depression. Currently Mr. Barack receives pain medication prescribed by Dr. Weinberger, including Methadone and Neurontin, and also takes over-the-counter pain medications, including Ibuprofen and Acetaminophen. He is very concerned about becoming addicted to the Methadone, and also finds it frightening because it lowers his respiration rate, so he tries to get by with over the counter medications when possible.

Mr. Barack's prior medical history is unremarkable.  Prior to the accident he describes himself as an athletic person who exercised everyday and who sought medical care so rarely that he did not have a primary care physician.

Mr. Barack has no significant psychiatric history, although he did take Prozac and Wellbutrin briefly in an attempt to quite smoking.  He appears to have had above average coping skills prior to the accident.  For example, he says he was able to adjust well to the birth of his third son, despite knowing that his son was severely disabled and would require life-long care.

Mr. Barack was born in Israel but spent most if his childhood in Argentina, and then returned to Israel as a teenager.  He served in the Israeli army, and then attended college at McGill University in Montreal, graduating in 1977.  He then worked for many years as

Psychological Treatment Report, Ron Barack, June 7, 2011

consultant, appraising artwork; as an analyst and securities broker for a Wall Street securities firm; as a real estate broker; and as the owner of his own real estate firm, assembling sites for large real estate developments.  In his early forties he returned to school, completing a Juris Doctor Degree at New York University School of Law, where he graduated in the top of his class and admitted to the Order of the Coif. Following his graduation from Law School he was employed at the Sullivan and Cromwell law firm as an associate attorney.  He left this position after three years to live overseas (Chile and Budapest) with his wife and children, as Mr. Barack and his wife were seeking highly specialized physical rehabilitation and medical care for their disabled son.  After returning to the Unites States Mr. Barack was hired as a legal business consultant for the Halstead International Company, but never began work because of the accident.  Mr. Barack has not worked since his accident.

Mr. Barack lives with his wife of 25 years and his youngest son, Jonah.  Jonah, who is eleven years old, is severely physically disabled secondary to cerebral palsy, and requires total care for all activities of daily living.  Mr. Barack also has two older sons: his eldest son Oren just graduated college from UC Berkeley, and his middle son Austin is currently enrolled in the University of Pennsylvania.  Currently his support network beyond his immediate family appears to be extremely limited.

**Behavioral Observations:**  Mr. Barack was seen for seven sessions of evaluation and psychotherapy, one phone session devoted to crisis management, and one additional phone session to gather historical information, between February 21st and June 6th, 2011. He is scheduled for weekly sessions but has not been able to attend weekly due to medical appointments (two instances), illness (two instances), attending his son's graduation in California (two instances), and the therapist's absence (one instance).

Mr. Barack has consistently arrived for sessions on time. He wears a glove over his injured left hand, which he does not remove throughout the session.  He has been well related and makes good eye contact. Mr. Barack's speech has consistently been fluent, but pressured, particularly when his anxiety increases.  Mr. Barack is very talkative, but the content of his speech is often tangential, and he can be difficult to redirect.  His intellect appears to be well above average.  He is very restless and impulsive, at times stopping the flow of conversation to examine something or jumping up to move about the room.  Mood is highly anxious, although affect is full range, and Mr. Barack's eyes often darken when he is discussing his experiences of the past years.  This mental status has been grossly consistent across all treatment sessions, with the exception that Mr. Barack showed a reduction in his restless and anxiety after participating in a relaxation exercise.

Mr. Barack has consistently reported that he feels anxiety in anticipation of the sessions and because of the stress of traveling to get to the therapist's office.  He has gradually become engaged in treatment, although there are clearly many topics that are so painful for him that he avoids discussing them in session.  He reports finding the sessions anxiety producing: although actual discussion of the accident has been very limited to date, Mr. Barack reports that even conversations about the changes in his life since the accident will trigger intrusive recollections of the accident itself to play through his mind during

4

Psychological Treatment Report, Ron Barack, June 7, 2011

treatment.  At times he has wanted to leave a session early when his anxiety or sadness has become too overwhelming.  Mr. Barack often reports feeling better at the end of the session than before he came, as he benefits from the support and the opportunity to talk about his experience.  However, he also reports that for several days following as session his anxiety will increase again, as a consequence of having recollections of the accident triggered during treatment.


**Review of Current Psychiatric Symptomatology:**

Currently Mr. Barack is suffering from Post-Traumatic Stress Disorder and is in the midst of a Major Depressive Episode.  His symptoms are reviewed below:

*Post-Traumatic Stress Disorder*

According to the Diagnosis and Statistical Manual of Mental Disorders, Fourth Edition (DSM IV), a diagnosis of Post-Traumatic Stress Disorder requires that an individual have a direct, personal experience of an event that involved actual or threatened death or personal injury, and that the person's response to the event must have involved intense fear, helplessness, or horror.  Mr. Barack meets this first criteria:  as described above, the accident he was in was clearly of sufficient severity to cause bodily harm, and he describes experiencing horror when seeing his severely mangled hand while simultaneously experiencing excruciating pain.  In addition, the minutes and hours immediately after the accident also appear to have been intensely frightening: Mr. Barack describes being afraid that the car would burst into flames, and being very frightened about his medical care.

Next, an individual is required to experience persistent re-experiencing of the traumatic event.  Mr. Barack's symptomatology in this domain is very severe, and meets this criteria in several ways:

First, he describes experiencing daily, intrusive, and distressing recollections of the accident.  At these times he remembers seeing the car lying on its side, how his hand looked at the time of the accident, the policeman trying to break the windshield, himself groaning in pain, the intensity of the pain, and going to the hospital.

Secondly, he has nightmares of the accident almost every night.  In these dreams he sees his mangled and injured hand; or dreams that he doesn't have a hand; or dreams that he was in another accident and suffered other severe and devastating injuries, such as burns to his face.

Third, Mr. Barack has experienced flashbacks in which he re-experiences the accident.  He describes these as feeling "as if I'm in a parallel universe" and "as if its happening right there."  He has experienced the flashbacks in many different situations.  For example, while in a car he has suddenly felt as if the car is rolling over.  He has also

Psychological Treatment Report, Ron Barack, June 7, 2011

experienced them while walking in the street (he said he grabbed a mailbox to keep from falling over), and even while lying in his bed.  In the past the flashbacks used to occur frequently; now he says he experiences them approximately one-two times a month.

Fourth, Mr. Barack has both intense psychological distress and physiological reactivity when he is exposed to things that remind him of the accident.  Specifically, he describes himself as very jumpy and anxious whenever he is exposed to anything that has to do with cars.  He no longer drives, and is extremely frightened even when he is a passenger in the car, as he feels afraid that an accident will happen at any moment. He is also very frightened when walking near a busy street, and says he is so frightened when crossing the street that he will hang back, standing far away from the curb, or even when hearing horns if he is inside.  This reactivity extends to watching car chases on TV, which Mr. Barack describes as very distressing, to seeing real or dramatic footage of any disaster scene on television, and even to hearing or reading about a disaster

Next, the DSM-IV requires an individual to show signs of avoiding stimuli related to the traumatic event, or of numbing of general responsiveness.  Mr. Barack easily meets this criteria as well:

First, he avoids talking about the accident; even in the context of his psychotherapy, which is meant to provide a safe holding environment, he has to be encouraged to talk about the accident and strongly dislikes talking about it in any detail. In fact, because of this he has sometimes refrained from revealing important details about the severity of his symptoms, because he finds it too upsetting.  In addition, Mr. Barack even finds it extremely upsetting to even talk about the effects of the accident upon his life, and when he does so in treatment, he experiences it as aversive.

Secondly, Mr. Barack avoids all stimuli that has to do with cars.  For example, he never drives any more, and also avoids being in a car as a passenger, which has complicated his ability to socialize.  He also avoids busy environments where there are a lot of cars, and even avoids watching car chases on TV.

Mr. Barack also shows a numbing of responsiveness to his environment.  He is markedly less interested in things he used to enjoy: whereas before he had a wide range of athletic and social interests he now spends his time isolated. He feels detached and estranged from those who are close to him, particularly his family.  While he is able to talk about his affection for his youngest son, when discussing all other family members his emotions are restricted, as if he knows he should be feeling something that he is not.

Finally, Mr. Barack is overwhelmed by a sense of a foreshortened future.  He is so frightened and negative in his views about his own health and the future that when he considers treatments that might be helpful for him, he can only see the risks involved, not the possible benefits.  For example, when he considers future surgeries for his hand, he is highly attuned to the surgeon's warning that it is possible that the surgeries will make his hand worse and he is particularly frightened by a possible increase in his pain.  When he considers starting medication for his depression and PTSD, he is so frightened by the

possibility that the treatment of choice (an SSRI) will increase his suicidal ideation that he is afraid to try.  Although he has been attending psychotherapy and has been able to form a relationship with his therapist, he experiences fear that his participation in treatment will ultimately hurt him.  This sense of impending doom overshadows any trust that he might have in his treating doctors.  Thus, this symptom of his PTSD creates so much fear about the future that it has kept Mr. Barack from possibly benefiting from interventions that might help him.

Next, the DSM-IV requires an individual to show symptoms of increased arousal. Mr. Barack experiences increased arousal in many ways.  For example, when he remembers the accident he is seized with a panicky, adrenaline driven energy that, when it passes, leaves him feeling completely exhausted and depleted, as if he might faint.  Mr. Barack describes this experience as a "rollercoaster."  His sleep is very poor; recently he has been sleeping only two to four hours a night.  He is often overwhelmed by irritability and is prone to outbursts of anger when interacting with others; because of this he chooses to isolate himself rather than create disturbances with those close to him.  He shows decreased concentration: for example, he says he is now unable to read, or when he does read, he has to re-read passages to retain what he has read.  He is extremely hypervigilant, both when in a car and exposed to cues related to cars, and also in his interpersonal interactions, where he is guarded and worried about other's intentions.  In sessions his mental status is marked by restlessness and mild agitation, and it is impossible for him to sit quietly throughout an entire psychotherapy session.

Finally, Mr. Barack's symptoms have lasted for more than a month, and cause clinically significant distress and impairment in his daily functioning (discussed below).

*Major Depressive Episode*

According to the DSM-IV, and individual in the midst of a Major Depressive Episode must experience at least five of nine symptoms of depression.  Mr. Barack meets criteria for all nine of the symptoms described:

First, Mr. Barack is experiencing a chronically low mood.  He describes himself as experiencing intense sadness, a "veil of depression" that comes upon him so strongly that he is unable to speak. He is consumed with thoughts of "Why me?" and feels that his life is ruined, or that his life is like quicksand, "and I am sinking lower and lower." He shows almost no interest in activities he used to enjoy.  He has experienced both weight loss and weight gain since his accident, and now weighs 25 pounds more than he did prior to the accident, despite eating very little.  He went through a period after the accident when he was hypersomulent, sleeping many hours during the day; more recently his sleep is very poor, just two-four hours a night.   He clearly shows signs of psychomotor agitation, which is apparent in his ever-present restlessness during his psychotherapy sessions.  His energy level is very poor, and he describes himself as chronically feeling "depleted" unless he is experiencing one of the anxiety attacks described above.  He is consumed by

Psychological Treatment Report, Ron Barack, June 7, 2011

guilt that he is not more able to be there for the people who are close to him, most notably his youngest, disabled son. At particularly low moments he wonders if he should divorce his wife and move far away so as to spare his family the distress of watching him suffer. He shows markedly reduced concentration and memory loss.

Finally, Mr. Barack has suicidal ideation, which presents itself in two ways. When Mr. Barack's depression increases, and he feels particularly hopeless, he says he will think of suicide as a way out of his unrelenting sadness and feelings of worthlessness. At these times, Mr. Barack has spent significant amounts of time planning strategies for killing himself such that the suicide will be hidden and so that his family would not realize what he had done. These urges have been strong enough that Mr. Barack sought support from a close family friend, who advised him that his death would be deeply traumatic to his family. Mr. Barack seems to have taken this advice seriously, as he denies suicidal intent in sessions. However, a more dangerous scenario is when Mr. Barack becomes agitated and angry – at these times he has strong impulsive urges to do something to end his life. At these times he describes being so distressed that he doesn't even care about hiding a suicide from his family. To guard against his urges at these times, Mr. Barack has been afraid to keep large amounts of opiate pain killers at home, as he is aware that they could be a means of suicide.

It does not appear that Mr. Barack has experienced any substantial remittance of his symptoms since they began after the accident. Thus, he appears to be experiencing a single, extremely lengthy, major depressive episode, consistent with a diagnosis of Major Depressive Disorder, Single Episode. This diagnosis of depression is consistent with the observations of Dr. Weinberger, who noted that Mr. Barack was presenting with depression at the time of his initial evaluation (6/9/2006)

**Impact on Daily Functioning:**

Mr. Barack's psychiatric illnesses (PTSD and Major Depression) have a severe impact on his functioning in all areas, and he currently describes his daily functioning as being dramatically lower than it was prior to his accident.

*Activities of Daily Living*: Mr. Barack is able to perform most basic activities of living, such as eating, washing, dressing, and grooming by himself, with extra time and effort. He requires assistance for some activities, such as putting on a tie or cutting his food, because of the limited mobility in his left hand. He is able to write with his right hand; although his injured hand was his dominant hand, he was raised to write right-handed as a child. However, more complex activities of daily living are performed only with a significant increase in anxiety and irritability. For example, Mr. Barack found it extremely stressful to make a call about his hotel room bill after his recent trip to California, as he found himself irrationally loosing his temper with the clerk. He reports feeling overwhelmed with increased anxiety when shopping, and thus avoids going into stores. Travel is a significant source of stress: Mr. Barack does not drive, and relies upon

his family to transport him.  He often experiences increased anxiety when walking on a crowded sidewalk or when near a busy street.  Because he finds interactions with his family to be stressful, he has withdrawn from most of the responsibilities he formerly assumed in his home.

*Family, Parenting, and Interpersonal Relationships:* The changes that Mr. Barack has experienced in his emotional well-being since the accident have had an enormous and negative impact on all of his interpersonal relationships.  In general he vacillates between two emotional states that make it very difficult for him to interact with people, even (or especially) the people close to him.  In one state, he describes himself as being highly, anxious, irritable and on edge.  He describes himself as having a hair-trigger temper, and as blowing up at people with very little provocation. In the other state he is overwhelmingly sad, with low energy and initiation. In both cases he withdraws and spends most of his time in a room in his attic which he has designated as his personal space: in the first state he withdraws so as not increase his anxiety or loose his temper and create a damaging disruption in his family; in the second state he withdraws because he does not have the energy or will to engage with others.  Both Mr. Barack and his wife describe this behavior as a dramatic change from his pre-accident personality; Mr. Barack describes himself as someone who was gregarious, outgoing, and who loved interacting with people before his accident.  He experiences great sadness that he is so cut off from other people, and longs to be re-engaged with others, but is also realistically afraid that when he emerges to interact with others it will end in conflict.  Relationships with individuals outside of his immediate family appear to be extremely limited.

Mr. Barack has been married for twenty-five years, and both he and his wife deny any significant marital difficulty prior to the accident.  Indeed, they seem to have been able to work effectively as a unit when facing the severe disability of their youngest son (an event which often puts strains on a marriage), and were able to work together upon mutual goals, such as in their travels to obtain specialized medical care for their son. However, Mr. Barack's significant psychiatric symptomatology has clearly put a strain on their marriage.  While Mr. Barack describes his wife as very supportive and helpful, it is also clear that the detachment and estrangement that he feels with others is very present in their relationship.  He appears unable to experience pleasure in their interactions, and they no longer share a bedroom or are physically intimate.  His irritability and hypervigilance lead to arguments between them that are distressing to both parties. Mr. Barack is aware that he is prone to becoming highly distressed and agitated over minor things; to avoid this scenario he often withdraws from all interactions, and in fact there are months of the year when he spends much of the week living separately from his wife.

This estrangement extends to Mr. Barack's relationship with his two older sons.  Mr. Barack describes himself as an "absent husband and father," while his wife describes him as "isolated from the family" and "not part of the family unit."  As described above, Mr. Barack is highly irritable, and when he attempts to engage with his sons, the interactions often end up marked by conflict.  He also avoids his older sons because he does not want

them to see him in a state of anguish or despair.  He feels intense guilt about his negative role in the family, and he feels that his family members also suffer when they see his intense distress.

However, it is the diminishment of his role in parenting his youngest, disabled son Jonah that is the greatest source of distress for Mr. Barack.  As is described above, Mr. Barack's entire family has traditionally been very focused on maximizing Jonah's development despite his diagnosis of cerebral palsy.  Prior to his accident Mr. Barack describes himself has having been very engaged in his son's daily care, which is extensive and requires physical dexterity as well as specialized knowledge.  Jonah's wellbeing has been a priority for the entire family; reflecting this Mr. Barack took extended leave of absence from his work as a lawyer so as to be able to be with his family when they were seeking medical treatment for Jonah abroad.  Mr. Barack is still deeply attached and protective of his youngest son, and it is in order to not disappoint him that he will often push himself to engage with the family, for example by attending a family dinner.  Despite this, he has withdrawn significantly from helping his son and spending time with him.

Mr. Barack reports that his physical disability prevents him from assisting in his son's care the way he did prior to his accident.  Jonah requires physical assistance in all aspects of his daily living.  In particular he needs to be lifted to transfer in or out of his wheelchair and in and about his home.  However, because of his spasticity he can easily move suddenly, necessitating that the person lifting him have good strength and coordination.  The wheelchair itself is heavy, but often needs to be lifted if Jonah is to leave the house.  Because of the pain and decreased mobility in his hand, Mr. Barack does not feel capable of lifting or moving his son or his equipment safely, and has had to withdraw from participating in these aspects of his son's care.  Given the high value that Mr. Barack and his family place on Jonah, it is understandable that Mr. Barack's inability to participate in his son's care causes him to experience immense feelings of worthlessness, loss and sadness.

However, Mr. Barack's psychiatric symptoms appear to be equally or more disabling than his physical symptoms in preventing him from caring for his son, as Mr. Barack is unable to engage in aspects of his son's care that are accessible to him despite his physical disability.  For example, his wife reports that Mr. Barack is no longer able to attend Jonah's doctor's appointments, most likely due to his fears of traveling and his difficulty navigating interpersonally stressful circumstances.  Mr. Barack has also significantly withdrawn from daily interactions with his son.  Mr. Barack reports making a great effort to engage with his son in such a way that his son does not detect what is wrong, and indeed Jonah appears to be the only person who can consistently motivate Mr. Barack to come out of his room and engage with others.  Despite this, Mr. Barack feels that his son can sense his moods and will often withdraw or respond negatively if he is not in a good frame of mind.  More overtly, if Mr. Barack is feeling jumpy or irritable when he interacts with his son he can loose his temper, or say the wrong thing, causing his son to become upset and cry.  These exchanges are emotionally devastating to Mr. Barack, who then berates himself for being a bad father and causing his son distress.  To avoid them, he has taken to limiting his time with his son altogether.  However, this

Psychological Treatment Report, Ron Barack, June 7, 2011

solution is highly distressing for Mr. Barack, who feels extremely guilty at abdicating his role as a father. This guilt then contributes to his depression, which makes him less able to interact appropriately with his son, creating a downward spiral.

The negative impact of Mr. Barack's psychiatric illnesses upon his role as a husband and father are well illustrated by the events surrounding a recent trip he took with the family to California. Prior to his accident Mr. Barack traveled frequently, both without his family and with them. In fact, the family had repeatedly lived abroad in order to seek specialized care for their disabled son. However, since the accident, Mr. Barack had ceased traveling with them. At one point the family had planned to travel to California, where their son was in school, but at the last minute Mr. Barack had withdrawn from the trip because of pain and emotional distress. However, because he had been gaining some confidence through his trips to therapy, and because he did not want to disappoint his son, in May of this year Mr. Barack planned to travel with his family to California to attend his son's graduation.

However, shortly before leaving for the trip, Mr. Barack called this writer in the midst of an acute anxiety attack triggered by his fears about whether or not he would be able to tolerate the demands of the trip, which included increased time with his family, living in a hotel room with his family for several days, eating all meals with them, being at the crowded graduation ceremony, and traveling by car and on the airplane. His speech was loud, rapid, and highly pressured, his thoughts were racing and tangential, and he was clearly panicked and completely distraught. He was afraid that if he went on the trip he would have a psychiatric breakdown so severe that it would undermine the progress he had made thus far. He wanted to cancel the trip, but was also highly distressed at the idea of disappointing his son by not attending his college graduation. At that time Mr. Barack participated in an emergency phone session devoted to practical problem solving and helping him find ways to decrease the demands of the trip and seek support from his wife. Mr. Barack eventually went on the trip, but says he spend much of the time in his hotel room alone and rarely ate meals with the family while they were away. He was very frightened and experienced shortness of breath when traveling in the airplane. When he returned from the trip his depression worsened, as he was overwhelmed with sadness and of feelings of inadequacy at not having been able to be more engaged with his family on the trip and horror at the extent to which his life has changed since the accident.

*Work:* Prior to his accident Mr. Barack describes a successful work history, including a position at a prestigious law firm, punctuated by leaves of absence taken in order to obtain highly specialized care for his disabled son. Although he was unemployed at the time of the accident, he had been hired by Halstead International and was scheduled to begin approximately a week after the accident. Mr. Barack reports a very high level of confidence in his pre-accident professional life, and describes himself as someone who had multiple doors open to him.

Since the accident Mr. Barack has been completely unable to work.  There are several factors that contribute to this:

First, Mr. Barack experiences severe and constant pain, which is highly distracting to him.  He also evidences significantly decreased concentration (as demonstrated by his mental status during sessions) and reports that this poor concentration keeps him from being able to read or sustain his attention during any kind of complex task.  He also reports decreased memory, which is often a by-product of reduced attention, which he finds frightening.  Inability to concentrate is a hallmark of both depression and PTSD.

Secondly, as described above, Mr. Barack experiences anxiety and emotional distress when he has to leave the house and travel, either by car or in a way which exposes him to cars.  He rarely drives, and when he does it is extremely anxiety producing. Because of this, he cannot transport himself to a work environment without immense anxiety.

Thirdly, and most significantly, Mr. Barack's decreased interpersonal functioning would prevent him from functioning in a work environment.  His anxiety and hyperarousal can be off-putting, and his irritability and difficulty controlling his temper would keep him from being able to work effectively with others.

*Leisure Activities:*

Prior to his accident, Mr. Barack describes himself as someone who had many varied interests and who was highly engaged in life.  He was highly physically active and used to run, bike, swim, mountain climb, ice climb, scuba dive, and sail.  He also used to play basketball with his sons and served as a volunteer coach for their basketball teams.  He used to read a lot and was active in tracking current affairs and world events.
Since the accident, Mr. Barack's engagement in leisure activities has shrunk to almost nothing.  This appears to be due to several factors.  First, several activities he used to enjoy are less accessible to him than they were prior, because he does not have the use of his left hand.  For example, he says that he avoids both sailing and biking because they require use of both hands.  Other athletic activities are now off limits, because they can have a significant role in increasing his pain: he cannot walk or move without pain in his body, jostling can increase the pain in his hand, and if his hand accidentally makes contacts with something, it can cause his pain to increase enormously.  For example, at one point Mr. Barack began walking on the advice of his physician, Dr. Mykoff, who had advised him that increasing his activity level would have a positive impact on both his depression and his PTSD.  Although this was a much less rigorous form of exercise than he enjoyed previous to his accident, he still found it enjoyable, and also took satisfaction from the fact that he was doing something to help himself.  However, after three days the pain in his body increased significantly, and he had to stop.  He was quite discouraged, and reports that in the end, the whole experience actually increased his feelings of sadness and depression.

Psychological Treatment Report, Ron Barack, June 7, 2011

However, Mr. Barack's psychiatric symptomatology also makes an independent contribution to his inability to enjoy leisure activities.  As described above, he finds traveling by car to be extremely frightening and aversive, so he avoids any activities that require him to travel by car, such as going to the beach.  As described above, his ability to interact with others is now very limited, and he isolates himself either because of depression, or because he is so jumpy and irritable that he knows that interacting with others will create conflict.  Being in busy or noisy environments increases his anxiety. Because of this, simple activities such as going to a restaurant with family members, or discussing politics with friends, are no longer options for him.

Finally, an important symptom that is present in both PTSD and depression is a lack of enjoyment and engagement in previously enjoyed activities.  In this way, both the PTSD and the depression directly limit Mr. Barack's ability to engage in activities he might enjoy.

Currently, Mr. Barack spends most of his time alone, and can easily go several days without leaving the house.  If no one is around he sits on the deck, where he says he can stare at the trees for hours.  When others are home, he secludes himself in his room in the attic where he tries to look at the internet and read (his decreased concentration makes both difficult), and tries to sleep.

**Course of Treatment:**

At the time that this report was written, Mr. Barack has been seen for a total of six sessions, most lasting 75 minutes, one emergency phone session, and one additional phone session to gather historical information.  The following are themes that have emerged thus far in treatment:

*Review of history of psychiatric symptoms and their impact on daily functioning:*

Because of the severity and complexity of Mr. Barack's symptoms, a full assessment of his psychiatric symptoms and their impact on his daily functioning could not be completed in a single initial evaluation, and thus parts of subsequent sessions have been spent developing a deeper understanding of Mr. Barack's experience since his accident.

*Building rapport and increasing trust in the therapeutic process:*

Despite chronic and severe psychiatric symptomatology, as well as encouragement from his medical doctors and his wife to seek treatment, Mr. Barack had not sought either psychological or psychiatric care prior to his current course of treatment.  He describes himself as being aware that he needed care, but says he has been trying to treat himself "on his own."  As is discussed above (under PTSD symptomatology), it appears that Mr. Barack's PTSD has been so severe that it has actually impeded his ability to seek care: his extreme hypervigilance makes him both over-sensitive to the possible negative effects of treatment as well as mistrustful of others.  Mr. Barack was clearly frightened when he

13

Psychological Treatment Report, Ron Barack, June 7, 2011

began treatment, and attending the sessions is very difficult for him.  First, in order to physically attend the sessions he has to face his fear of traveling and of being in a busy, crowded environment, as the therapist's office is in Manhattan.  In addition, as described above, going to the sessions can increase his anxiety both during the sessions and afterwards, because even the act of talking about his life since the accident triggers intrusive recollections about the accident itself, as well as feelings of overwhelming shame and sadness about the changes in his life.  There have been times when he has even tried to leave a session early, because he has felt so distressed.  In light of this, extra time has been taken in sessions to build rapport, and to establish the therapeutic environment as safe and supportive.

*Psychoeducation about treatments for PTSD and Depression/Developing a Treatment Plan:*

Mr. Barack entered treatment with a large amount of knowledge about PTSD and Depression, which he had gained from reading on the Internet.  However, as is often true, in gathering this information Mr. Barack had come to some conclusions that were not fully accurate and thus warranted exploration and additional education as part of his treatment.  Thus, a section of several sessions was spent in providing him with psychoeducation and beginning to develop a treatment plan.  For example, Mr. Barack has been very reluctant to begin a course of SSRI's, which are commonly prescribed for PTSD, as he was afraid that they would increase his already existing suicidal ideation.  Thus, in one session discussion was devoted to the frequency of this side effect, the possible benefits of treatment with SSRI's, and exploration of possible ways to increase his safety should he decide to try a course of treatment, including intensive outpatient monitoring or inpatient hospitalization.  Discussion has also explored Mr. Barack's fears that his brain has been permanently altered by his PTSD, and the importance of incorporating relaxation training, both in and out of sessions, to begin to decrease his hyperarousal.

*Cognitive Behavioral Techniques: Beginning to explore the patient's belief system:*

Sessions have begun to introduce cognitive behavioral techniques, which have been shown to be effective in patients with PTSD and Depression.  In sessions this has taken the form of a beginning to help Mr. Barack identify some of his cognitive biases, such as his strong bias towards expecting the worst outcome (commonly seen in PTSD and Depression), and how this impacts the decisions he makes about his care.  Sessions have also begun to introduce therapeutic techniques to reduce the intensity of these thoughts, such as teaching Mr. Barack to observe a thought without acting upon it.

*Sessions as Exposure:*

Given Mr. Barack's extreme isolation and tendency to withdraw and limit his interactions with others, the act of leaving his home to come to a therapy session also serves as an "exposure" to the things that are most frightening to him.  For example, to attend the sessions, Mr. Barack must travel by car and train, and must walk on the busy streets of

14

Psychological Treatment Report, Ron Barack, June 7, 2011

the city.  When in the city he often interacts with other people, for example, people on the street, or the salesclerk who sells him coffee. In session he is encourage to talk about things that he finds upsetting, such as the dramatic changes he has experienced in his life since his accident. Mr. Barack describes this as one of the most helpful elements of the therapy, saying the experience of being out of his house and interacting with others reminds him of who he used to be and can be cheering to him.  It also seems to have encouraged him to take some bigger risks, such as his recent decision to travel with his family to California.

**Current and Future Treatment Goals and Plan**:

In light of the above analysis, the following are the current goals for Mr. Barack's current course of psychotherapy:

*Short-term goals (to be addressed in the next year):*

- To increase Mr. Barack's comfort in discussing the emotional distress he experiences as a result of his injury.
- To increase Mr. Barack's willingness to consider additional forms of treatment that may help to reduce his symptoms, such as psychopharmacological adjuncts to psychotherapy.
- To increase Mr. Barack's engagement in exercise and other leisure activities that can help to reduce his anxiety and depression
- To increase Mr. Barack's ability to use relaxation strategies to decrease his anxiety when he encounters an anxiety producing cue or stimuli
- To reduce Mr. Barack's suicidal ideation, such that it does not pose a threat to his safety

*Medium term goals (to be addressed over the next three years):*

- To decrease the anxiety that Mr. Barack experiences in his daily activities, particularly in relationship to cues associated with the accident
- To decrease Mr. Barack's depression
- To increase his ability to engage with his immediate family members
- To increase his ability to resume important family responsibilities, particularly regarding the care of his youngest son
- To increase his ability to travel by car without severe anxiety

Psychological Treatment Report, Ron Barack, June 7, 2011

*Long-term goals (to be addressed subsequently, if and when Mr. Barack's
symptomatology reduces sufficiently to make pursuit of these goals realistic):*

- To increase Mr. Barack's comfort in driving
- To explore the possibility of returning to work, on a part-time or full-time basis

To date, Mr. Barack has been scheduled for weekly sessions, reflecting the difficulty he
has traveling to the city, as well as some logistical concerns on the part of his therapist.
However, the current rate of treatment is too little to create a significant decrease in Mr.
Barack's symptomatology, and as such he would benefit from having his session
frequency increased to two, or even three, times weekly. It is expected that he would
need sessions at this intensity for a minimum of three years, and would need a minimum
of weekly sessions thereafter indefinitely. He would also benefit from
psychopharmacological treatment of his psychiatric symptoms, at such a point as he
becomes open to these interventions. Even with treatment, the severity of Mr. Barack's
symptoms mean that his prognosis is guarded, and it is currently not possible to speculate
upon a date after which he will not need psychiatric interventions.

Sabrina Breed, Ph.D.
Clinical Psychologist
(917) 207-9612

# EXHIBIT C

**Ron Barack**

Dx:    **Post-Traumatic Stress Disorder (309.81), chronic**
        **Major Depressive Disorder, Single Episode, Severe without**
        **Psychotic Features (296.23)**

**Treatment Notes: February, 2011**

2/21/2011

Pt seen for 60-minute session initial evaluation (CPT code 90801). Pt referred for tx for emotional distress secondary to a MVA in 2006 in which he sustained severe damage to his left hand. Reviewed records sent by pt's lawyer, Susan Friery MD: deposition given by pt, deposition given by pts wife, accident report, and medical reports. Pt arrives on time. Speech is fluent and pressured. Content of speech is somewhat tangential and pt is difficult to redirect. Pt is talkative and impulsive, at times stopping the flow of conversation and jumping up to examine something in the room. He is wearing a glove over his injured left hand, which he does not remove throughout the session. Despite this, pt is very well related, makes good eye-contact, and easily builds rapport. Mood is mostly bright in session, although pts eyes darken at times when discussing his experiences over the past years. Session is devoted to a review of symptoms and experiences, and because of the nature of pts presentation, this review is somewhat disorganized. However, pt clearly presents with sx of PTSD: he reports experiencing both nightmares and flashbacks; hypervigilance; reactivity to cues associated with his accident – specifically fear of being in cars, near cars, or in traffic; difficulty concentrating; negative views of the future. Pt also reports significant periods of depressed mood, feeling extremely "sad," and periods of suicidal ideation (no intent or plan currently), feelings of pessimism and fear, excess sleep, lack of interest in life. These fluctuate, but when they come are extremely disabling – pt reports that a few months ago he had been able to begin a period of daily walking which had help him to feel better, but that he had then gotten depressed and had been unable to continue. Pt also reports pain, which is says is mostly constant, which he tries to treat with less addictive medications, as he afraid of addiction to morphine, for example. However, he still finds he has side effects from these medications – ie stomach distress. As a result of these sx, pt is very impaired: He says he "has not left the house in months," to which he attributes his bright mood when coming to the session – he says the day out is cheering to him. He mostly stays alone in his room in the attic reading on the internet things related to his accident. He does not feel able to work. He has been afraid to take medications, fearing that they will increase his feelings of suicide. And because of his depression he lacks will and motivation to engage in other helpful behaviors, such as yoga, which he has researched. He says he tries some breathing exercises and "exposures" on his own. He appears to engage little with his family, although this is only minimally explored in the session. He is open to coming for sessions with me for a while. Because session runs over and because pt travels to come to session, session for next week is scheduled for 75 minutes.

Goals:
Decreased sx of PTSD
Improve sx of depression
Monitor suicidal ideation
Increase engagement in treatment
Increase social support
Improve daily functioning


Sabrina Breed, Ph.D.


2/28/2011

Pt seen for a 75 minute session of psychotherapy (90808).  Mental status is consistent with the previous week, although intensity somewhat diminished – pt is still with pressured and somewhat tangential speech and impulsivity, but less so than in the previous session, likely reflecting reduced anxiety.  Pt reports having "a bad week" in the past week, which he attributes to the stress of having attended the session in the previous week and reviewed his symptoms and the accident.  Specifically he reports increased frustration at home, a "short fuse" – blowing up at his wife over little things, and increased isolation – "so that noone sees me sad."  He reports both enjoying and being stressed by the trips to the city: on one hand he welcomes them as a break from the enormous amount of time he spends isolated at home.  On the other hand, he finds the contact with cars and traffic very frightening, comparing it to "a man who has been burnt and is walking amongst flames."  Pt spoke more descriptively about his periods of suicidal ideation:  he says that he has spent significant amounts of time planning strategies for killing himself such that noone else gets hurt and noone will find him.  He says that his thoughts of SI can come out of sadness, but also out of anger – at these times he impulsively feels like doing something to end his life.  Because of this he has been afraid to keep large amounts of opiate pain killers at home, as he is aware that they could be a means of suicide.  Despite this, he does not have intent at this time and does not appear to be an immediate risk to himself.  Much of session spent in discussion of tx plan.  Pt sees himself as with a generally poor prognosis, given the severity of his sx.  His negative, pessimistic thoughts make it hard for him to engage in treatment: he is reluctant to try medications, as he fears the SSRI's will increase his symptoms, and he is worried that his engagement in psychotherapy will work against him in a legal context.  Different strategies for tx of PTSD discussed – pt is worried that if he begins to get better, the stress of his court case and its attendant need to describe his accident and symptoms will cause his symptoms to increase, destroy his progress and lead him to believe that he cannot improve.  Despite this, he feels comfortable with our sessions, and is open to

continuing. Pt will not attend next week, as his son is home visiting from college, but will next attend on March 14th.

Goals:
Decreased sx of PTSD (cont)
Improve sx of depression (cont)
Montor suicidal ideation (cont)
Increase engagement in treatment (cont)
Increase social support (continue)
Improve daily functioning (cont)

Sabrina Breed, Ph.D.

**Ron Barack**

Dx:     **Post-Traumatic Stress Disorder (309.81), chronic**
        **Major Depressive Disorder, Single Episode, Severe without**
              **Psychotic Features (296.23)**

**Treatment Notes:  March, 2011**

3/14/2011

Pt seen for a 75-minute session of psychotherapy (90808).  Pt reports that the past week was difficult because his son was home from college, and he therefore felt the pressure of having to interact with others as he finds it much easier to be alone.  Pt reports that on Friday "a veil of depression" came upon him so strongly that "I couldn't speak" and he withdrew from family gatherings.  Despite this there is no evidence of increased suicidality.  Much of discussion focused on family matters: pt showed photographs of his family and spoke of his intense sadness ("the hardest things for me") at not being able to contribute to the care of his son Jonah, who has CP, as he did prior to his accident.  PT is limited by his physical disability and pain, as care for his son requires strength for lifting, etc.  However, equally or more disabling are his psychiatric symptoms: pt says if he is not in the right frame of mind – for example if he is jumpy or feeling irritable, then when he interacts with his son he can say the wrong thing and cause his son to cry.  Pt feels emotionally devastated and like a bad father after these unsuccessful exchanges, and has thus taken to avoiding his son.  Session also introduced CBT techniques:  for example, long discussion of pt's cognitive bias towards expecting the worst outcome, which is typical of PTSD and Depression, and how this impacts the decisions pt makes about his care.  Introduced therapeutic techniques to combat these and other thoughts, particularly the technique of observing thoughts to decrease their intensity.  Mood is improved at the end of the session – pt reports that he had not wanted to come to session, but in the end was glad that he decided to attend.

Goals:
Decreased sx of PTSD (cont)
Improve sx of depression (cont)
Montor suicidal ideation (cont)
Increase engagement in treatment (cont)
Increase social support (continue)
Improve daily functioning (cont)

Sabrina Breed, Ph.D.

3/21/11

Pt seen for a 75-minute session of psychotherapy (90808). Sessions begin with a review of pts experience of coming to session. Pt reports that the sessions themselves are extremely anxiety producing: he is currently unable to discuss details of the accident in session, and finds even discussions of the changes in his life since the accident to be very upsetting. However, he enjoys being out, and finds it a relief to interact with others on the street. This leads him to discuss fantasies of making a big change in his life – leaving and escaping to a place where noone knows him, and he can start fresh. Pt says he loves being out with people, and describes himself as a gregarious and outgoing person before the accident. Because of this he experiences great sadness that he is so cut off from others, and his longing to be re-engaged in life. Relationship with me is discussed in this light – how the sessions are stirring to him because it is one of the only places in his life where he feels safe to begin to talk about his experiences. Session then reviews CBT technique introduces last session of observing thoughts to decrease their intensity. Finally, discussion of techniques such as meditation and yoga that pt could use outside of session to decrease his hyperarousal and improve his ability to relax.

Goals:
Decreased sx of PTSD (cont)
Improve sx of depression (cont)
Montor suicidal ideation (cont)
Increase engagement in treatment (cont)
Increase social support (continue)
Improve daily functioning (cont)

Sabrina Breed, Ph.D.

Ron Barack

Dx:   Post-Traumatic Stress Disorder (309.81), chronic
      Major Depressive Disorder, Single Episode, Severe without
      Psychotic Features (296.23)

**Treatment Notes: April, 2011**

4/4/2011

Session cancelled by therapist. Pt unclear if can attend next week due to doctor's appt.

Sabrina Breed, Ph.D.


4/11/2011

Pt cancelled session due to doctor's appointment. Will attend next week.

Sabrina Breed, Ph.D.


4/18/2011

Pt cancelled session due to illness. Will attend next week.

Sabrina Breed, Ph.D.


4/25/2011

Pt cancelled session due to illness. Will attend next week.

Sabrina Breed, Ph.D.

Ron Barack

**Dx:**    **Post-Traumatic Stress Disorder (309.81), chronic**
**Major Depressive Disorder, Single Episode, Severe without**
**Psychotic Features (296.23)**

**Treatment Notes:  May, 2011**


5/2/2011

Pt seen for a 75-minute session of psychotherapy (90808).  Session begins with a brief discussion of pt's anxiety about his lawsuit.  PT finds interacting with the doctors and lawyers to be extremely aversive and has fears that it will undermine his therapeutic process.  Review of guidelines re: pt confidentiality given legal dispute.  Discussion is first in a month since previous session: pt reports intense anxiety in the past two weeks, and says he has been jumpy and irritable, and has been fighting with his son over things such as his spending.  Discussion of his marriage since the accident.  Pt says the changes in him are hard on his wife, but also feels that at times his wife lacks sufficient patience.  Discussion of experience of his wife, particularly how she has suffered her own losses since the accident, due to changes in his.  Pt says the changes in his relationship with his youngest son are much more distressing that the changes in his relationship with his wife: he can no longer assist in his son's care as he used to.  Particularly he can't hold or carry him, as his son's spasticity means he can move around and be easily dropped if the carrier does not have a firm grip.  Pt is devastated to not be able to care for his son, and says the loss, grief, and feelings of worthlessness of he feels because of this worsen his anxiety, depression, and symptoms of PTSD.  Pt has also been out with a friend since his accident, and describes the pleasure he felt in being out and interacting with others.  Pt is planning to go with his family to attend his son's graduation in California – will next attend on 5/23/11/


Goals:
Decreased sx of PTSD (cont)
Improve sx of depression (cont)
Montor suicidal ideation (cont)
Increase engagement in treatment (cont)
Increase social support (continue)
Improve daily functioning (cont)

Sabrina Breed, Ph.D.

5/9/11

Session cancelled for today, as pt said would be leaving for California. However, received phone call from patient, and had 45-minute phone session of crisis management. Pt had not yet left on his trip, and was having an acute anxiety attack and was completely overwhelmed by fears about the trip. Speech was loud, rapid, and highly pressured, thoughts are racing and tangential, and pt is clearly panicked and completely distraught. Pt is afraid that he will not be able to tolerate the demands of the trip, which include increased time with his family, living in a hotel room with his family for several days, eating all meals with them, being at the crowded graduation ceremony, and traveling by car and on the airplane. Pt is afraid that he will completely fall apart on the trip, that he will have a psychiatric breakdown so severe that it will undermine the progress he has made thus far. Pt is considering canceling the trip, but is also highly distressed at the idea of disappointing his son by not attending his college graduation. Session is devoted to practical problem solving – helping pt identify options for decreasing the demands of the trip: shortening the trip by going at a later date, getting a separate hotel room, not attending all family meals. Pt also encouraged to seek support from his wife, who pt describes as supportive, and to discuss these options with her before hand. Pt also encouraged to call me for support while he is away. Pt benefits from the intervention, anxiety is reduced at end of session, although pt still highly anxious.

Sabrina Breed, Ph.D.

5/23/11

Pt seen for a 75 minute session of psychotherapy (90808). Mood is very low, and pt is restless, and it is difficult for him to talk about his experience of his trip. Pt will only say that he went on the trip, but spent much of his time alone in the hotel room and rarely ate meals with his family. When he returned from the trip he "collapsed" - his depression worsened, he was overwhelmed with sadness and of feelings of inadequacy at not having been able to be more engaged with his family on the trip, and horror at how dramatically his life changed since the accident. Because pt is so upset, session switches to introducing a guided relaxation technique. Pt is very responsive to this intervention, and his anxiety diminished notably afterwards. His speech is slower and calmer, and he thoughtful and engages more easily. Pt is even able to talk a briefly about the accident, what it was like to see "all the broken glass." Discussion of his children, their developmental stage, and how this is impacting their relationship, as he has found himself arguing with his elder sons. Also discussion of pain in his hand – how he attempts to deal with it, and how easily the pain can be triggered, if he hits something, for example. Pt leaves with significantly improved mood, saying "I didn't realize how bad I was until I came in."

Goals:
Decreased sx of PTSD (cont)
Improve sx of depression (cont)
Montor suicidal ideation (cont)
Increase engagement in treatment (cont)
Increase social support (continue)
Improve daily functioning (cont)

Sabrina Breed, Ph.D.

Ron Barack

**Dx:**  **Post-Traumatic Stress Disorder (309.81), chronic**
**Major Depressive Disorder, Single Episode, Severe without**
**Psychotic Features (296.23)**

**Treatment Notes: June, 2011**

6/1/2011

50 minute phone session with pt reviewing procedures for report: setting up time to talk over the weekend, when report will be released to lawyers, etc. Pt with anxiety about report, how much of his personal experience will be discussed. Pt also reports "a really bad week-end," says he was fighting with his wife, and so distressed and agitated that he felt suicidal "and I didn't care who would find me." Provided pt with emotional support. Plan is to discuss more when pt attends session next on 6/6.

*[signature]*

Sabrina Breed, Ph.D.

6/6/11

Pt seen for a 75 minute session of psychotherapy (90808). Pt continues to present as anxious, with pressured speech and mild impulsivity. Most of session spent reviewing pts recent psychological treatment report, and clarifying statements in report. Elicited that pt experiences intrusive recollections of accident throughout all psychotherapy sessions, even when accident itself is not discussed, and this contributes to his experience of the sessions as anxiety producing and aversive. Participated in joint problem solving to find a way to increase pt's comfort in sessions, and provided him with psychoeducation re: structure of sessions, with goal of increasing psychological safety. Pt to next attend in two weeks (therapist away, and pt cannot attend make-up session).

Goals:
Decreased sx of PTSD (cont)
Improve sx of depression (cont)
Montor suicidal ideation (cont)
Increase engagement in treatment (cont)
Increase social support (continue)
Improve daily functioning (cont)

*[signature]*

Sabrina Breed, Ph.D.

6/20/2011

Session cancelled by pt.  Pt to attend next week.

Sabrina Breed, Ph.D.


6/27/2011

Pt seen for a 75-minute session of psychotherapy (90808).  Pt continues to present with an anxious mood, with pressured speech and mild impulsivity.  Pt reports intense anxiety in the past week, which he attributes to tensions within his family and stress of lawsuit. Discussion of family dynamics, which have changes significantly since pt's accident.  Pt again speaks of his distress at not being able care for his youngest, disabled son, and also spoke of transition in roles with wife now that he is less involved in son's care.  Much of session spent in tx planning:  discussion of payment for session, frequency, and length of sessions, and therapeutic techniques to use in session.  Recommended that pt attend twice weekly, but as this is difficult due to logistics, pt to continue to attend once weekly.  Used relaxation exercise for second time; pt again responded with significant reduction in anxiety and an improvement in his mood.  Also introduced mindfulness technique pt can use (observe/describe) when with high anxiety or when experiencing a flashback.  Pt to attend in two weeks due to July 4th holiday.


Goals:
Decreased sx of PTSD (cont)
Improve sx of depression (cont)
Montor suicidal ideation (cont)
Increase engagement in treatment (cont)
Increase social support (continue)
Improve daily functioning (cont)

Sabrina Breed, Ph.D.

Ron Barack

Dx:    Post-Traumatic Stress Disorder (309.81), chronic
       Major Depressive Disorder, Single Episode, Severe without
          Psychotic Features (296.23)

Treatment Notes: July, 2011

7/11/2011

Pt seen for a 60-minute session of psychotherapy (90806). Pt's mood is mildly anxious in session, and he continues to report episodes of very low mood and intense anxiety between sessions. Discussion is on how pt could possibly re-build his life post-accident. Pt acutely aware of multiple losses (professional, personal) over past five years, which leave an enormous void in his life and make it impossible for him to easily resume his life as it was prior to his accident. Pt also has ongoing struggles with pain, disabling sx of PTSD and depression, which are overwhelming to him. Begin to elicit and explore pts thoughts about future as well as his current values. Pt has fantasies about leaving and starting over in a new place, but also has commitment to wife and youngest disabled son. Helped pt to articulate values to guide decision making: pt does not appear overly motivated by financial gain, and is response to reframing and problem solving about the future; for example discussion of volunteer work as a beginning pathway to explore his capacities within a work environment. Pt also with interest in working in a less strenuous work environment than prior, for example in a non-profit, or of using money to help disabled children. Began to discuss impact of pt's symptoms on pt's marriage. However, this topic is clearly extremely anxiety producing for pt and as a result it is difficult for him to engage in conversation about it. However, he does say that he feels the events subsequent to the accident and the changes in him have "ruined" his relationship with his wife, and that it is beyond repair. Pt to next attend in two weeks, due to therapist's absence.

Goals:
Decreased sx of PTSD (cont)
Improve sx of depression (cont)
Montor suicidal ideation (cont)
Increase engagement in treatment (cont)
Increase social support (continue)
Improve daily functioning (cont)

Sabrina Breed, Ph.D.

7/25/2011

Session cancelled by therapist. Pt to attend next week.

Sabrina Breed, Ph.D.

Ron Barack

Dx:    **Post-Traumatic Stress Disorder (309.81), chronic**
       **Major Depressive Disorder, Single Episode, Severe without**
       **Psychotic Features (296.23)**

**Treatment Notes: August, 2011**

8/1/2011

Pt scheduled for a 60-minute session of psychotherapy (90806), but arrives late due to difficulty with trains. Mood is stable, if somewhat anxious, in session. Pt reports anxiety about older son who is soon returning to live in family home for a while: pt says he and son have been prone to conflict since his accident due to his hypervigilance, high sensitivity, and short fuse, and is worried about disrupting family with conflict. Continuation of discussion about how to "get my life back" post accident. Pt is beginning to cognitively reframe re: this issue. For example, open to exploring if he might be capable of increased functioning in the community even if symptoms of pain and PTSD don't diminish. For example, pt shows good awareness that engagement in work or a volunteer activity could diminish his isolation and help with sx of depression. Discussion of use of psychiatric medications to reduce sx: pt provided with psychoeducation re: medication's benefits, but he continues to be very fearful that medications could exacerbate his suicidal ideation or impede his recovery long-term. Family is discussing returning to Budapest for a few months to seek ongoing tx for their son's disability; relative to early sessions pt shows more interest in such a trip, and expressed hope that he might function better there, as he had positive experiences when living there previously. Pt to attend next week.

Goals:
Decreased sx of PTSD (cont)
Improve sx of depression (cont)
Montor suicidal ideation (cont)
Increase engagement in treatment (cont)
Increase social support (continue)
Improve daily functioning (cont)

Sabrina Breed, Ph.D.

# EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| RON BARACK,<br>And DONNA MOORE BARACK,<br><br>Vs.<br><br>AMERICAN HONDA MOTOR<br>COMPANY, INC., and HONDA<br>MOTOR COMPANY, LTD., and<br>HONDA MANUFACTURING OF<br>ALABAMA, LLC | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

09-cv-00565(AWT)

JULY 21, 2011

**PLAINTIFF, RON BARACK'S THIRD AMENDED AND SUPPLEMENAL RESPONSE
TO DEFENDANT AMERICAN HONDA MOTOR CO., INC'S FIRST SET OF
INTERROGATORIES**

The plaintiff, Ron Barack, hereby amends and supplements his responses to the

Interrogatories propounded to him by defendant, American Honda Motor Co., Inc., (AHM).

**INTERROGATORIES**

16.      Please describe in detail the injury or injuries that you stained which you claim
resulted from the incident; the nature and status of such injuries; and, the names, addresses and
dates of treatment of any and all treating physician and/or health care providers who have treated
you for the injuries claimed herein.

**ORIGINAL RESPONSE:**   See Complaint for description of injuries.  See medical
records and bills (previously produced) for names and addresses of treating health care providers.
See also attached special damages summary.

**SUPPLEMENTAL RESPONSE:**  On June 22, 2010 counsel for Honda was provided

with medical authorizations signed by Mr. Barack.

**THIRD AMENDED AND SUPPLEMENTAL RESPONSE:** In addition to the medical

providers previously disclosed through medical records, Ron Barack has recently come under the

1

treatment of Sabrina Breed, Ph.D.  Dr. Breed is a clinical psychologist and has diagnosed Ron

Barack with post traumatic stress disorder and major depressive disorder and her findings are

detailed in her report that has been provided.  Dr. Breed initially evaluated the plaintiff at the

request of counsel in February, 2011 and Mr. Barack has elected to continue the treatment.  We

have requested Dr. Breed's treatment records and also attached an authorization permitting the

defendants to obtain the treatment records.  Dr. Breed will be made available for deposition upon

request.

Dated: New York, New York
      July 21, 2011

                               Yours, etc.

                               Noah H. Kushlefsky, Esq.
                               Kreindler & Kreindler, LLP
                               750 Third Avenue
                               New York, New York 10017
                               (212) 687-8181
                               Attorneys for Plaintiff

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK    )
                                        )ss.:
COUNTY OF NEW YORK  )

Juan E. Rodriguez, being duly sworn, deposes and says:  He is not a party to the within action, is over 18 years of age and works at 750 Third Avenue, New York, N.Y. 10017.

That on July 21, 2011, he served a copy of the attached **PLAINTIFF, RON BARACK'S THIRD AMENDED AND SUPPLEMENAL RESPONSE TO DEFENDANT AMERICAN HONDA MOTOR CO., INC'S FIRST SET OF INTERROGATORIES** upon each of the party or parties listed below, attorneys for defendants, via email and by depositing same in an official depository of the United States Postal Service to the addresses designated by the parties for such service.

The party or parties served were as follows:

Michelle I. Schaffer, Esq.
Campbell Campbell Edwards & Conroy
One Constitution Plaza
Third Floor
Boston, MA 02129
mschaffer@Campbell-trial-lawyers.com
*Counsel for Defendants*

Juan E. Rodriguez

Sworn to before me this
21st day of July, 2011

Notary Public

IVETTE VIERA
Notary Public, State of New York
No. 01VI4877339
Qualified in Rockland County
Commission Expires November 17, 20__

3