UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | |
|---|---|
| RON BARACK and ) | |
| DONNA MOORE BARACK, ) | |
| ) | |
| *Plaintiffs*, ) | 09-cv-00565 (TLM) |
| ) | |
| vs. ) | |
| ) | |
| AMERICAN HONDA MOTOR ) | |
| COMPANY, INC., HONDA ) | |
| MOTOR COMPANY, LTD., and ) | |
| HONDA MANUFACTURING OF ) | |
| ALABAMA, ) | |
| ) | |
| *Defendants*. ) | SEPTEMBER 16, 2013 |

**THE DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THEIR MOTION TO PRECLUDE THE TESTIMONY OF PLAINTIFF RON BARACK'S TREATING PHYSICIANS ADDRESSING THE UNFAIR PREJUDICE ASSOCIATED WITH THE TESTMONY**

Pursuant to the Court's Order of August 28, 2013 [Docket Entry 221], the defendants supplement their Motion to Preclude the Testimony of Plaintiff Ron Barack's Treating Physicians [Docket Entry 213] describing the unfair prejudice to the defendants by the plaintiffs' efforts to introduce medical testimony and evidence precluded by prior Orders of the Court [Docket Entries 149 and 157] or otherwise not produced until the eve of trial.

## SUMMARY OF THE EVIDENCE AT ISSUE

The evidence under review concerns testimony about evaluations made of plaintiff Ron Barack by his treating physicians Dr. Robert Strauch and Dr. Michael Weinberger at the request of Mr. Barack's counsel in 2011, five years after these providers last treated him and as to additional care they rendered thereafter up through the present. Specifically, through video-taped depositions for trial, the plaintiffs have elicited testimony concerning opinions set forth in

1

Dr. Strauch's litigation expert report dated June 3, 2011[1] (Exhibit A[2]) and a medical record dated November 15, 2012 (Exhibit B) for follow up care received by Mr. Barack.[3] The plaintiffs additionally have elicited testimony concerning opinions contained in a litigation expert report by Dr. Weinberger dated June 6, 2011[4] (Exhibit C) and in subsequent medical records dated March 28, 2011, September 16, 2011, October 17, 2011, November 7, 2011, November 15, 2012 and August 19, 2013 (Exhibit D).[5] Dr. Weinberger was also asked by the plaintiffs to comment about a medical visit on September 9, 2013 as to which no medical record was produced and about which there had been no prior disclosure.

As a general matter, the defendants are prejudiced by the untimely disclosure and use of this evidence because they could not evaluate and properly respond to the matters raised in the new materials. This was recognized by Chief Judge Thompson in his Order re Plaintiffs' Motion for Reconsideration; in denying the relief requested he referenced concerns about the defendants being unfairly prejudiced by the appearance of new counsel and expressed that new counsel would not be permitted to change the course of the case. [Docket Entry 157, page 2]. By the time that the plaintiffs improperly forwarded the litigation expert reports, the defendants had

---

[1] This report was forwarded by the plaintiffs to the defendants on June 6, 2011 while their motion for leave to serve the report was pending and later denied [Docket Entry 149] and about a month before the defendants' own damages expert disclosure was due to be served.

[2] All exhibits to the instant memorandum will be sent via electronic mail to the Court's law clerk, rather than being filed on ECF given that they may contain HIPPA protected information.

[3] This record was not provided to the defendants until August 14, 2013, six days before the trial deposition of the defendants' expert, Dr. Blazar.

[4] This expert report was forwarded by the plaintiffs to the defendants on June 8, 2011 while their motion for leave to serve the report was pending and later denied [Docket Entry 149] and about a month before the defendants' own damages expert disclosure was due to be served.

[5] The medical note of March 28, 2011 was produced at the discovery deposition of Dr. Weinberger on August 23, 2011 (after the defendants had disclosed their damages experts). The records of September 16, 2011, October 17, 2011, November 7, 2011, November 15, 2012, and August 19, 2013 were not provided to the defendants until August 20, 2013, one day before the trial deposition of the defendants' expert, Dr. Blazar.

2

already made decisions concerning expert retention based upon the plaintiffs' prior damages disclosure and were in the process of preparing their own disclosure relative thereto. Based upon the nature of the plaintiffs' damages disclosure referencing treatment from 2006 for the treaters at issue, the defendants retained a hand surgeon, Dr. Philip Blazar, and not a pain management specialist as Mr. Barack had only had one visit in 2006 with his pain management specialist. Additionally, judgments were made as to whether an independent medical examination (IME) would be performed by the defendants' expert hand surgeon; given that the operative damages disclosure served by the plaintiffs indicated that both Dr. Strauch and Dr. Weinberger had last examined Mr. Barack in 2006, and therefore they would be unable to testify about his current condition, a determination was made not to have Mr. Barack undergo such an examination. In light of the timing of the disclosures by the plaintiffs *while* leave was sought to make them, the defendants did not take discovery of the matters set forth therein.[6] The defendants reasonably relied upon the Court's orders denying the plaintiffs leave to use the newly disclosed matters, [Docket Entries 149 and 157], and accordingly, did not request additional discovery depositions.

While the litigation expert reports were forwarded (without leave of court) just prior to the date the defendants' damages expert disclosure was due, the new treatment records were produced extremely recently, on the eve of the trial depositions and with very little time to permit evaluation, let alone, rebuttal.

The unfair prejudice to the defendants by allowing the plaintiffs to present the testimony expressly barred by Chief Judge Thompson's prior Orders or otherwise disclosed late is

---

[6] At the time of the discovery depositions of Dr. Strauch and Dr. Weinberger in August of 2011, the Plaintiffs' Motion for Leave to Properly Disclose Damages Experts and Modify Scheduling Order [Docket Entry 142] had been denied [Docket Entry 149] and the Plaintiffs' Motion for Reconsideration of Their Motion Regarding Damages Expert Disclosure [Docket Entry 150] was pending. Accordingly, counsel for the defendants informed counsel for the plaintiffs that since they did not have leave to serve the reports for Dr. Strauch and Dr. Weinberger, defense counsel would not question the witnesses on the new matters but would reserve the right to reconvene the depositions if their motion was allowed.

illustrated in the following categories of testimony elicited during the medical video-taped depositions for trial:

1. **Dr. Blazar – Videotaped Deposition for Trial on August 21, 2013**

    A.   *Cross-Examination on Dr. Blazar's Failure to Perform an IME:* The plaintiffs cross-examined Dr. Blazar on his failure to examine Mr. Barack on approximately seven separate times during the deposition. See Trial Deposition Transcript of Dr. Blazar (Exhibit E), pages 62, 129, 133, 147, 151, 165 and 172. Ordinarily, the failure of a medical expert to conduct an IME is a ripe area for cross-examination, and the defendants would have expected it. They too planned to cross-examine Dr. Strauch and Dr. Weinberger on the same basis since neither provider had seen Mr. Barack since 2006. The plaintiffs stand unfairly to benefit if they are permitted to present evidence about post-disclosure examinations and treatment and at the same time discredit Dr. Blazar for not having seen Mr. Barack because during the preparation of his report, no other testifying treater for Mr. Barack had seen him since 2006.

    B.   *Cross-Examination to Corroborate Dr. Strauch's Findings:* Not only did the plaintiffs attempt to discredit Dr. Blazar about his failure to perform an IME of Mr. Barack, they cross-examined him about the recent findings of Dr. Strauch and Dr. Weinberger, including when he first learned of these new treatment reports, how he learned about the new treatment reports and their contents. Exhibit E, pages 168-170. Dr. Blazar further was cross-examined for not being able personally to comment on Mr. Barack's current range of motion or function in his hand and was asked to validate Dr. Strauch's findings on examination as contained in the recently disclosed treatment records. The typical question posed on cross-examination was "Do you have any reason to disagree with Dr. Strauch's findings upon examination in 2011 that…." See e.g., Exhibit E, page 178. See also id. pages 177, 179. If there been a timely disclosure of

4

these examination records by the plaintiffs and a decision not to have Dr. Blazar examine Mr. Barack by the defendants, then an inquiry of this type would be expected. In the circumstances, however, it is unfairly prejudicial to allow the plaintiffs to reap the benefits of the late disclosure by confirming that Dr. Blazar has no reason to dispute Dr. Strauch's findings given that the defendants relied on the prior court rulings that the plaintiffs would not be permitted to use these materials and therefore did not take discovery about them or reconsider whether an IME by Dr. Blazar should be undertaken.

      C.    <u>Cross-Examination to Corroborate Mr. Barack's Decision Not to Undergo Surgery</u>: Further, the plaintiffs unfairly cross-examined Dr. Blazar on new opinions for Dr. Strauch apparently reached in 2011 about Mr. Barack's decision not to undergo surgical procedures back in 2006. Exhibit A, page 4. The plaintiffs' damages disclosure incorporated by reference Dr. Strauch's treatment record from November 17, 2006 recommending to Mr. Barack staged surgical procedures in an attempt to provide improved mobility and functioning of the hand, and in doing so, advised Mr. Barack that "I have explained that the hope would be that he would be improved, but it is possible that he may be no better or could be worse from the scarring, although that would be less likely than the fact that he would be improved." Exhibit F. The defendants certainly were on notice of and prepared to address these recommendations and the risks associated with further surgeries. While the defendants anticipated cross-examination of Dr. Blazar on these matters, in light of Chief Judge Thompson's Orders precluding Dr. Strauch's expert report, it was unfair for the plaintiffs to cross-examine Dr. Blazar on Dr. Strauch's further opinion contained in the barred disclosure that "[i]t would have been reasonable for the patient under these circumstances and with this degree of injury to forego surgery." Exhibit E, page 170-171, Exhibit A, page 3. The defendants had never taken

discovery of Dr. Strauch on the basis for this opinion formed five years later; and therefore, Dr. Blazar was put in the difficult position of having to comment on the new opinion as to which there had been no proper disclosure without the benefit of a prior deposition of Dr. Strauch as to the basis of that opinion.

2. **Dr. Strauch – Videotaped Deposition for Trial on August 22, 2013**

   A. *Prejudicial Use of an Untimely IME to Validate Mr. Barack's Lay Testimony:* The prejudicial impact of permitting Dr. Strauch to testify about the matters set forth in his litigation report from his IME of Mr. Barack and in his follow up treatment record is significant because it allows the plaintiffs to offer testimony from Dr. Strauch about Mr. Barack's current condition in an attempt medically to validate Mr. Barack's lay testimony, whereas under Chief Judge Thompson's prior Orders, the plaintiffs would not be permitted to offer evidence of medical evaluation after 2006. The testimony under consideration elicited by the plaintiffs from Dr. Strauch, included, *inter alia,* corroboration of Mr. Barack's lay testimony about the limitations in the mobility of his fingers, his functioning and his pain. Trial Deposition Transcript of Dr. Strauch (Exhibit G), pages 78-87. While it was expected that Mr. Barack would testify from a lay perspective about these things, it was assumed that he would have no expert support on these matters given that he had chosen not to have any further medical evaluation up through the date of the Plaintiffs' Damages Disclosure. By presenting this evidence, the plaintiffs stand to benefit greatly because Mr. Barack's lay testimony about his current condition will now have medical validation. The defendants, however, are unfairly prejudiced because they relied upon the Plaintiffs' Damages Disclosure when they made decisions about their own expert presentation on damages, and had no opportunity to take discovery of or to consider refutation of the medical testimony on these issues.

B.  *Prejudicial New Opinions on Surgery, Permanency and Prognosis*: The plaintiffs additionally seek to present testimony by Dr. Strauch on Mr. Barack's current status as a surgical candidate, the permanency of his condition and his prognosis into the future. These topics were not considered by Dr. Strauch in 2006 and therefore were not contained in the Plaintiffs' Damages Expert Disclosure. The plaintiffs' presentation of their damages case is enhanced significantly by expert testimony on these matters because it permits the jury to consider evidence otherwise barred by the prior Orders of Chief Judge Thompson and as to which the defendants had no opportunity to take proper discovery. The following testimony elicited by plaintiffs' counsel on direct examination illustrates this point:

Q:  As you saw him in 2012, is that – do you have an opinion within a reasonable degree of medical certainty whether that's as good as he's going to get or anything other than that."

Ms. Schaffer: Objection.

A:  I would not expect for him to get appreciably better from now on.

Q:  As he ages, will that have any effect on his left hand?

Ms Schaffer: Objection.

A:  As he ages? He could develop arthritic conditions in the hand that would maybe limit the motion some more.

Q:  And would that have any other effects, such as pain or otherwise?

Ms. Schaffer: Objection.

A:  Arthritis can be painful, yes.

Exhibit G, pages 87-88.

The disclosure rules are intended to prevent unfair surprise to the opposing party. The plaintiffs' efforts to present this testimony, which could not have been contemplated by the defendants at the time of their own disclosure clearly circumvents these rules.

3. **Dr. Weinberger – Videotaped Deposition for Trial on September 11, 2013**

   A. *The Prejudicial Impact of Testimony on Pain Management From 2011 Through the Present:* Dr. Weinberger is a pain management specialist to whom Mr. Barack had been referred by Dr. Strauch. Dr. Weinberger had only seen Mr. Barack on one occasion in 2006, Exhibit H, and not again until his IME in 2011 because Mr. Barack chose not to return to see him. The vast majority of the 3 hour direct examination by the plaintiffs of Dr. Weinberger concerned his IME and the medication protocol he offered to Mr. Barack at that time, and of the subsequent medical visits and efforts of pain control offered by Dr. Weinberger from 2011 to the present. Accordingly, the plaintiffs' presentation of medical testimony through this witness is enhanced significantly if the evidence under consideration is permitted and the defendants are unfairly prejudiced because they had no opportunity to take discovery of, evaluate or respond to these new findings.

   B. *The Prejudicial Impact of Testimony on New Conditions Diagnosed in 2011:* Up through the date of the plaintiffs' damages disclosure in January of 2011, other than the one visit with Dr. Weinberger in June of 2006, Mr. Barack had not seen any additional pain management specialists, had not been evaluated for pain and had not been prescribed medication for pain until Dr. Weinberger's IME on March 23, 2011. If permitted to offer the evidence precluded under Chief Judge Thompson's prior Orders or otherwise disclosed late, the plaintiffs will have Dr. Weinberger testify about new conditions, Allodynia and Complex Regional Pain Syndrome, not present in 2006 but discovered in 2011 which he believes to be related to the initial injury. See

Trial Deposition Transcript of Dr. Weinberger (Exhibit I), pages 55, 65-68. Given the untimely disclosure, the defendants could not take discovery of Dr. Weinberger regarding these new findings. In particular, the defendants had no opportunity to learn in advance of trial whether, in Dr. Weinberger's opinion, given Mr. Barack's five year hiatus in treatment, an earlier diagnosis and treatment would have benefitted Mr. Barack. Id. pages 175-176.

In addition, the plaintiffs stand to benefit greatly by having Dr. Weinberger give medical validation to Mr. Barack's lay testimony concerning his pain as he was asked in his direct testimony to read the detailed and graphic descriptions Mr. Barack gave to him in the office about his pain and the effects of the medication prescribed. See e.g., Exhibit I, pages 73-75 and 89. Finally, as with Dr. Strauch, Dr. Weinberger would offer the opinion that Mr. Barack's injuries are permanent; he made no such finding in 2006. Id. pages 125-126.

## CONCLUSION

The defendants complied with the Scheduling Order set by the Court and provided their own damages expert disclosure responding to the available information concerning the plaintiffs' damages allegations. The defendants then relied upon Chief Judge Thompson's prior Orders precluding the relief that the plaintiffs seek herein. It is inherently prejudicial to permit the plaintiffs to benefit through the presentation of an enhanced damages case, as to which the defendants were never afforded a timely and fulsome disclosure. The Defendants' Motion to

Preclude the Testimony of Plaintiff Ron Barack's Treating Physicians should be allowed.

                    HONDA MANUFACTURING OF ALABAMA, LLC,
                    AMERICAN HONDA MOTOR CO., INC., and
                    HONDA MOTOR CO., LTD.

                    By their Attorneys
                    CAMPBELL CAMPBELL EDWARDS
                    & CONROY, P.C.,


                    __/s/ Michelle I. Schaffer_____
                    James M. Campbell (Juris # 09276)
                    Michelle I. Schaffer (Juris # 15607)
                    One Constitution Center
                    Boston, MA 02129
                    Tel. No. (617) 241-3000
                    Fax No. (617) 241-5115
                    jmcampbell@campbell-trial-lawyers.com
                    mschaffer@campbell-trial-lawyers.com


CERTIFICATE OF SERVICE

     I hereby certify that on September 16, 2013 a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

    Andrew J. Maloney, Esquire
    Kreindler & Kreindler
    750 Third Avenue
    New York, NY 10017
                         __/s/ Michelle I. Schaffer_____
                         Michelle I. Schaffer