UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
--------------------------------------------------------------- X
Ron Barack, et al.,

                                    Plaintiff,        ORDER
                -against-                            Case No. 09-cv-565 (TLM)

American Honda Motor Co., Inc., et al.,

                                  Defendants
--------------------------------------------------------------- X

       Before the Court are the Parties' Joint Submissions Concerning the Defendants' Objections and Plaintiffs' Responses Regarding the Videotaped Trial Testimony of Robert J. Strauch, M.D. [Rec. Doc. 242], Philip Blazar, M.D. [Rec. Doc. 243], and Michael Weinberger, M.D. [Rec. Doc. 244].

**A. Objections to Dr. Robert J. Strauch's Videotaped Testimony**

       Plaintiffs have tendered Dr. Strauch as an expert in hand surgery. His deposition was taken on August 22, 2013. The defendants object to six portions of Dr. Strauch's testimony:

       1.    Defendants argue that the photographs of Barack's hand prior to surgery, as contained in Exhibit B,[1] and Dr. Strauch's testimony regarding the same [Strauch Dep. 29:7-31:23] have no probative value and are unfairly prejudicial "as they will be used merely to inflame the jury." [Rec. Doc. 242 at 2]; *see* Fed. R. Evid. 401 & 403.[2] Plaintiffs argue that the

---

[1] The Court received the photographs of Barack's hand which were taken prior to surgery ("Exhibit B") as attachments to an email sent on September 19, 2013 at 2:42 p.m. from Michelle Schaffer, defendants' counsel, to its law clerk, Brenna Kelly.

[2] Defendants also argue that the photographs were not properly disclosed during discovery or in the plaintiffs' exhibit list, however the Court finds this not to be an issue. Plaintiffs indicate that the photographs were included as part of Dr. Bluestein's emergency room report, which was exchanged during discovery and listed on the exhibit list, and the defendants acknowledge that they received the photographs during discovery. [Rec. Doc. 242 at 1-3].

jury will be assisted in assaying the severity of Barack's injury and, as a result, the damages by viewing a small number of photographs.[3] [Rec. Doc. 242 at 3].

"Still photographs, motion pictures, and videotapes, once properly authenticated, are admissible in evidence if helpful to the trier of fact's understanding of a fact of consequence in the litigation." Michael H. Graham, 1 *Handbook of Fed. Evid.* § 401.7 (5th ed. 2000). While gruesome photographs may be inflammatory, the defendants have failed to show that the photographs at issue are such. Additionally, the Court finds that the probative value of the photographs outweighs their prejudicial effect. Plaintiffs will therefore be permitted to present this portion of Strauch's testimony and the accompanying photographs provided to the Court in Exhibit B to the jury. *See Bellinger v. Deere & Co.*, 881 F. Supp. 813, 819 (N.D.N.Y. 1995) (holding that photographs of a hand injury in a products liability case would be permitted as evidence because the defendant failed to "provide details" regarding the photographs' inflammatory nature).

2.      Defendants make similar objections to a portion of Dr. Strauch's testimony [Strauch Dep. 31:24-35:3] concerning photographs taken *after* Barack's hand surgery ("Exhibit C")[4] as they do to the photographs taken *prior* to the surgery ("Exhibit B"). Defendants' arguments on these grounds fail for the same reasons set out above.

The defendants also argue that the photographs contained in Exhibit C should be excluded because they were not disclosed until August 21, 2013,[5] the date of Dr. Blazar's deposition and two days before Dr. Strauch's deposition. [Rec. Doc. 242 at 4]. Plaintiffs acknowledge that "defendants' counsel may be correct that these specific photos may not have

---

[3] The Court notes that there are a total of three photographs, in black and color versions. *See* Exhibit B.
[4] The Court received the photographs of Barack's hand after surgery ("Exhibit C") as attachments to an email sent on September 19, 2013 at 2:42 p.m. to its law clerk, Brenna Kelly.
[5] The defendants state that Dr. Blazar's deposition occurred on August 20, 2013, but the Court notes that the deposition transcript indicates that the deposition occurred on August 21, 2013.

been provided to defendants through inadvertence." [Rec. Doc. 242 at 3]. While the plaintiffs may not have disclosed the Exhibit C photographs until August 20, 2013, Defendants were on notice of the *content* of Dr. Strauch's deposition with regard to these photographs, such as the procedures performed during Barack's hand surgery, even if they received the photographs in an untimely manner.

The Court finds that the defendants' citation to a case granting discovery sanctions against a party who had not properly disclosed a particular theory of damages to be far afield from the instant facts. *See* [Rec. Doc. 242 at 4] (citing *Design Strategy, Inc. v. Davis*, 469 F.d 284, 298 (2d Cir. 2006)). As such, the Court rejects the defendants' unfair prejudice argument which relies on the empty statement that "[t]he defendants never had an opportunity to take discovery about the photographs or to consult with their expert about them." [Rec. Doc. 242 at 4]. The defendants do not assert that additional discovery *is* or *was* necessary. This testimony [Strauch Dep. 31:24-35:3] and the photographs in Exhibit C will be permitted to be presented to the jury.

3. Defendants object to another portion of Dr. Strauch's testimony [Strauch Dep. 55:5-57:4] that utilizes the Exhibit C photographs to point out scarring on Barack's hand. For the reasons set out in Section A(2), this testimony will be permitted to be presented to the jury.

4. Defendants argue that the portion of Dr. Strauch's testimony discussing the discharge summary [Strauch Dep. 69:5-72:2] should be precluded because it was not disclosed that Dr. Strauch would discuss it and because it has no probative value and is unfairly prejudicial. [Rec. Doc. 242 at 6-7]. Plaintiffs argue that defendants were aware that prior treating physician records would be discussed and that Dr. Strauch, a treating and expert physician, is permitted to review and provide an opinion on prior treatment records. [Rec. Doc. 242 at 7].

Plaintiffs also argue that the informed consent portion of the records which Dr. Strauch discusses are "relevant to decisions [Barack] made about his care and part of the treatment discussion and plan." [Rec. Doc. 242, at 7]. The Court agrees and will permit this testimony to be presented to the jury.

5. Defendants object to Dr. Strauch's testimony that discusses whether Barack's decision not to visit Dr. Weinberger, the pain specialist, for 30 or 60-days after June 9, 2006 could be explained [Strauch Dep. 131:18-132:4], assuming Barack was narcotic-free "within a month of June 9, 2006." [Rec. Doc. 242 at 7]. Defendants argue that Dr. Strauch is asked to speculate as to reasons why Barack did not return to Dr. Weinberger when he has no knowledge of why Barack did not return, and that the testimony is prejudicial because it "attempt[s] to validate Mr. Barack's anticipated testimony in this context." [Rec. Doc. 242 at 7]. Plaintiffs argue that "treating physicians and experts can be asked hypothetical questions regarding opinions and decision making by patients for various treatments." [Rec. Doc. 242 at 8]. Here, Dr. Strauch's only assumption – that Barack ceased taking narcotics for some period – is a reasonable hypothetical as it asks the physician to assume only one, readily identifiable, fact; likewise, Dr. Strauch's response is also based on his experience interacting with patients and his understanding of how prescription drugs are dispensed, rather than mere conjecture. As such, the Court will permit this testimony to be presented to the jury.

6. Finally, defendants object to a portion of Dr. Strauch's testimony concerning the cause of Barack's injuries [Strauch Dep. 142:8-143:4] because "[t]he plaintiffs' attorney is eliciting new testimony from Dr. Strauch on causation and goes beyond the scope of cross-examination and is therefore impermissible." [Rec. Doc. 242 at 8]. Plaintiffs argue that the opinion, which tied the degloving injury to the car accident on March 20, 2006, was discussed

4

throughout the testimony. [Rec. Doc. 242 at 9]. The Court agrees that Dr. Strauch had already discussed the role of the car accident in Barack's hand injury from the perspective of the history that Barack had given him. *See* [Strauch Dep. 16:13-16:19]. Further, "[r]edirect examination may be used to rebut false impressions that arise from cross-examination." *United States v. Wiley*, 846 F.2d 150, 156 (2d Cir. 1988) (citing *United States v. Martinez*, 775 F.2d 31, 37 (2d Cir.1985)). This passage [Stauch Dep. 142:8-143:4] will be permitted to be presented to the jury.

### B. Objections to Dr. Philip Blazar's Videotaped Testimony

Defendants have tendered Dr. Blazar as an expert in hand surgery and pain management. His deposition was taken on August 21, 2013. Defendants object to five portions of Dr. Blazar's testimony elicited by plaintiffs' counsel:

1. Defendants object to Dr. Blazar's testimony [Blazar Dep. 53:7; 55:1-63:12] concerning the Exhibit B photographs of Barack's hand prior to surgery. This testimony will be permitted to be presented to the jury for the same reasons set out in Section A(1). However, the lawyer colloquy [Blazar Dep 53:8-54:24] is to be struck.

2. Defendants object to a portion of Dr. Blazar's deposition that references the Exhibit C photographs [Blazar Dep. 65:22-72:18]. This testimony will be permitted to be presented to the jury for the same reasons as set out in Section A(2).

3. Defendants' object to a second portion of testimony elicited concerning the Exhibit B photographs [Blazar Dep. 126:3-128:18]. This testimony will also be permitted to be presented to the jury for the same reasons as set out in Section A(1) above.

4. Defendants object to a portion of Dr. Blazar's testimony [Blazar Dep. 133:11-134:10][6] discussing keloid scarring because it "is not referenced in the records." [Rec. Doc. 243 at 6]. The Court has not found any discussion of keloid scarring in either Dr. Strauch or Dr.

---

[6] This ruling includes line 10 from page 134 in order to cover the entire sentence of Dr. Blazar's response.

Blazar's testimony outside of the objected-to testimony. Plaintiffs claim that "[t]his is fair cross examination of defendants' expert physician based on records and physical examination of plaintiff. . ." [Rec. Doc. 242 at 6], but do not cite anything in the plaintiff's medical records or otherwise explain why Dr. Blazer's comments regarding keloids are a proper area for this expert to opine on. Based on the Court's own review of the record and the lack of guidance from the plaintiffs, the discussion of keloid scarring does not have "any tendency to make a fact more or less probable than it would be without the evidence" and, as such, is not relevant and must be excised from the videotape. Fed. R. Evid. 401(a).

5. Defendants object to another portion of Dr. Blazar's testimony concerning the Exhibit C post-operative photographs for the same reasons discussed previously. [Blazar Dep. 136:12-139:21]. This testimony will be permitted to be presented to the jury for the same reasons set out in Section A(2) above.

**C. Objections to Dr. Michael Weinberger's Videotaped Testimony**

Plaintiffs have tendered Dr. Weinberger as an expert in pain management. His deposition was taken on September 11, 2013. Defendants object to seven portions of Dr. Weinberger's testimony:

1. Defendants argue that plaintiffs should not be permitted to ask Dr. Weinberger about his prior testifying experience [Weinberger Dep. 28:2-29:15] because it "attempts improperly to bolster his qualifications as to which there was no cross-examination." [Rec. Doc. 244 at 1]. Plaintiffs argue that "[t]his is standard background on an expert and treating physician . . . as it relates to the witness' relevant experience and expertise." [Rec. Doc. 244 at 2]. The Court finds that the questions and testimony are relevant to Dr. Weinberger's experience, which

is a consideration in qualifying an expert under Federal Rule of Evidence 702, and, as such, will permit the testimony to be presented to the jury.

      2.      Defendants argue that Dr. Weinberger's discussion of his recollection and medical opinion concerning Barack's 2006 visit is inadmissible because "there was no prior disclosure" and because "Dr. Weinberger [is] offering testimony based upon improper speculation." [Rec. Doc. 244 at 2]. Plaintiffs agree to withdraw a certain portion [Weinberger Dep. 47:12-48:14] of Dr. Weinberger's testimony and to the extent of the withdrawal, defendants' motion is granted. Otherwise, the Court finds defendants' disclosure argument to be unsupported in its current form and, further, finds the testimony to be based on Dr. Weinberger's medical experience and his review of Barack's 2006 medical records. As such, the rest of the objected-to portion [Weinberger Dep. 48:15-50:17] will be permitted to be presented to the jury.

      3.      Defendants object to that portion of Dr. Weinberger's testimony [Weinberger Dep. 72:24-73:8][7] that tangentially mentions the fact that Barack has a son with cerebral palsy on the grounds that it is irrelevant and unfairly prejudicial. [Rec. Doc. 244 at 2]. Plaintiffs argue that the testimony helps the jury understand the plaintiff's inability to see Dr. Weinberger more often and explains a potential source of Barack's hand pain (i.e. the attempted lifting of his son). [Rec. Doc. 244 at 3]. Plaintiffs do not support their "potential source of pain" reasoning. The Court finds that based on the record before it, the testimony's probative value is "substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403 and, as such, the testimony will not be permitted to be presented to the jury.

      4.      Defendants object to that portion of Dr. Weinberger's testimony that discusses whether Dr. Weinberger's fee is contingent upon the result of the case. [Weinberger Dep. 95:2-95:5]. Defendants argue that the testimony is unfairly prejudicial and not probative. [Rec. Doc.

---

[7] The Court finds that the proper line number to end the passage is eight, not nine.

244 at 3]. Plaintiffs counter that the testimony they elicit here from Dr. Weinberger is "routine" and "demonstrates that Dr. Weinberger has no interest in the outcome of the trial." [Rec. Doc. 244 at 3]. The Court finds that a similar question[8] is contained in a primer discussing how to qualify an expert witness under Connecticut law. Accordingly, since defendants cite no jurisprudence or other substantiation that this type of testimony is impermissible, the Court will permit this testimony to be presented to the jury.

5.   Defendants argue that the portion of Dr. Weinberger's testimony that discusses Barack's emotional and cognitive issues [Weinberger Dep. 99:19:101:8] should be excluded because Dr. Weinberger did not treat Barack for the same. [Rec. Doc. 244 at 3]. Plaintiffs agree to withdraw a portion of the objected-to testimony [Weinberger Dep. 99:19-100:11] and to that extent defendants' motion is granted. The Court finds that the remaining testimony either discusses Barack's medical records or is permissible opinion testimony of Dr. Weinberger and will therefore permit the testimony to be presented to the jury. [Weinberger Dep. 100:12-101:8].

6.   Defendants object to Dr. Weinberger's testimony that discusses the excuse that Barack provided Dr. Weinberger as to why he was not seeing him more frequently [Weinberger Dep. 106:10-106:16]. Defendants assert that plaintiffs are seeking "to validate Mr. Barack's lay testimony where *due to prior court orders*, he will have no medical support," [Rec. Doc. 244 at 4] (emphasis added), but do not specify which of this Court's prior rulings they refer to. After a review of the record, the Court cannot find an order standing for the proposition that defendants assert. Plaintiffs argue that this testimony is relevant because it shows the limitations in Barack's ability to follow through with visits and figures into the type of pain medication Dr. Weinberger

---

[8] In the testimony, plaintiffs' counsel asks: "[a]nd do you have any contingent interest in the outcome of this case whatsoever?" to which Dr. Weinberger replies: "No, sir." Similarly, a Connecticut primer on how to qualify an expert witness indicates that the following question is permissible: "[d]oes your compensation in any way depend on the outcome of this case?" Foundations for Evidence – Qualifying the Expert Witness 6 CONN. PRAC., Trial Practice § 3.34 (2d ed.) (2013).

would prescribe. This testimony [Weinberger Dep. 106:10-106:16] will be permitted to be presented to the jury.

7.      Defendants object to Dr. Weinberger's testimony referencing a discussion between Barack and Dr. Weinberger concerning medical marijuana because it is "irrelevant and inflammatory." [Rec. Doc. 244 at 4]. The Court does not find that testimony about medical marijuana in a discussion between a patient and his doctor to be inflammatory in 2014. The Court finds the testimony to be relevant under the minimal relevance standard under Federal Rule of Evidence 401 and, as such, this testimony will be permitted to be presented to the jury. [Weinberger Dep. 112:21-113:15].

**SO ORDERED.**

_____
Tucker L. Melançon
United States District Judge

February 11, 2014
Bridgeport, CT