UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| RON BARACK and | ) | |
| DONNA MOORE BARACK, | ) | |
| *Plaintiffs*, | ) | 09-CV-00565 (TLM) |
| | ) | |
| vs. | ) | |
| | ) | |
| HONDA, | ) | |
| | ) | |
| *Defendant..* | ) | |

**PLAINTIFFS' OPPOSITION TO HONDA'S MOTION FOR JUDGMENT AS A
MATTER OF LAW**

A reasonable jury would have a legally sufficient basis for returning a verdict in

plaintiffs' favor on their failure to warn, defective design and manufacturing defect claims based

on the evidence.  The Rule 50 standard is the same as the summary judgment standard:  A court

may not grant a Rule 50 motion unless "the evidence is such that, without weighing the

credibility of the witnesses or otherwise considering the weight of the evidence, there can be but

one conclusion as to the verdict that reasonable [persons] could have reached." *This Is Me, Inc. v.

Taylor*, 157 F.3d 139, 142 (2d Cir. 1998) (citation and internal quotation marks omitted.).

Plaintiffs allege that Honda is liable, among other reasons, because (1) it failed to

adequately warn Ron and Donna Barack that the 2006 Honda Odyssey rollover side curtain

airbag would not protect them or their children during some roll-over accidents, including the

accident that maimed Mr. Barack; (2) the side curtain airbag system was defectively designed;

and (3) alternatively the side curtain airbag system contained a manufacturing defect.  The Court

must credit any evidence favorable to the plaintiffs so long as a reasonable juror could credit it

and any other evidence must be disregarded unless a jury would have to accept it as true in

1

deciding Honda's motion. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150–51 (2000).

Here, plaintiffs Ron and Donna Barack testified that had they been adequately warned that the Honda Odyssey rollover side curtain airbags were designed by Honda to not deploy during certain rollovers, they would not have selected that vehicle. Honda has admitted that it did not disclose this information and the jury could reasonably interpret the information that Honda did provide regarding the functioning of the rollover side curtain airbag as informing consumers that the curtain would deploy to protect Odyssey occupants in all rollover accidents. Plaintiffs' testimony is sufficient to present the failure to warn theory to the jury. Additionally, plaintiffs' experts testified that Honda designed the Odyssey rollover side curtain airbag with an unacceptable and defective "Dead Zone" and that the defect caused Ron Barack's injuries supporting plaintiffs' defective design theory. Last, the failure to protect Barack during the rollover is *res ipsa loquitor* evidence as to the manufacturing defect – the airbag did not properly deploy, which, in and of itself, is evidence of the product's defect. Defendants' motion for a directed verdict should be denied in all respects.

## 1. Failure to Warn

Connecticut law imposes liability on a "product seller" for injuries sustained by a claimant who establishes that the seller did not provide "adequate warnings." Conn. Gen. Stat. Ann. § 52-572q(a). Under the statute, then, "[a] product may be defective because a manufacturer failed to warn of the product's unreasonably dangerous propensities." *Tomer v. American Home Products Corp.*, 368 A.2d 35, 39 (Conn. 1976). A Rule 50 motion on a products liability failure to warn claim must be denied when "[t]here is … evidence in the record from which a reasonable jury <u>could</u> infer that if different warnings had been provided," the

plaintiffs "would not have" used the defendants' product. *Fraser v. Wyeth, Inc.*, 857 F. Supp.2d 244, 255 (D. Conn. 2012) (emphasis added.)  In *Fraser*, a product liability case against a pharmaceutical manufacturer and seller, the plaintiff testified that had she been "advised … differently" she "would not have taken" the drug. *Id.*  Her doctor testified that had he been advised differently he would have changed his recommendation. The trial court held that this evidence was sufficient to defeat the defendant's motion for summary judgment on the failure to warn claim under Connecticut law.

In this case, there is ample evidence in the record that the plaintiffs would not have selected the vehicle if they had been adequately warned.

When shopping for a vehicle, plaintiffs were subjected to Honda's marketing materials touting the Odyssey's rollover curtain, which assured the plaintiffs and other consumers that this, along with other safety features, would give them "peace of mind." *See* Plaintiffs' Exhibit No. 11A (Business Week advertisement promoting the Odyssey); Plaintiffs' Exhibit No. 8A (Honda Odyssey brochure that the plaintiffs relied upon).   Despite Honda's representations in the marketing materials, Honda now admits that it never informed purchasers that side curtain airbags were not designed to operate in certain rollover crashes and this admission was published to the Jury.

Both Ron Barack and Donna Barack have testified that safety was critically important to them in selecting a vehicle.  Their youngest son is severely disabled with cerebral palsy and their older sons were beginning to drive at the time that they bought the Odyssey.  The plaintiffs testified that they selected the Odyssey because they believed it was a particularly safe vehicle. Plaintiffs introduced into evidence the Honda documents that they reviewed before buying the car.  Those materials state that the minivan was safe and further expressly said that passengers

would be protected because Honda developed technology that would "trigger airbag deployment in the event of a rollover." *Id.*   The Honda dealerships that Mrs. Barack visited reaffirmed this erroneous information.  Mrs. Barack testified that she was told at the dealership that the airbags would protect passengers in the event of an accident.  In addition to the marketing materials, the vehicle operating manual, which plaintiffs read and relied upon and which is in evidence (Plaintiffs' Exhibit 8B), fails to state that in a rollover event, the airbags might not deploy, even though this failure was an intentional design decision on the part of Honda.  The plaintiffs further testified that had they been advised that the side curtain airbag would not deploy in certain crash scenarios such as a rollover, they would not have selected the vehicle.

Courts in Connecticut and elsewhere have clearly ruled that proof from a plaintiff that he or she would not have used a product had the seller warned of the risk is sufficient to establish causation in a product liability failure to warn case.

In *Fraser*, a Connecticut District Court recently rejected a defendant's argument that testimony from a plaintiff that she would not have used a product had she been adequately advised of the risks associated with its use was sufficient for the failure to warn claim to go to the jury. *See* 857 F.Supp.2d at 255.  Similarly, the Supreme Court of Missouri, a state employing a product liability failure to warn standard analogous to Connecticut's statute, rejected a motor vehicle manufacturer's argument that the plaintiff's testimony that had she known that a car seat would not protect her in an accident given her size, she would not have purchased the car was not an adequate basis to allow the failure to warn claim to go to the jury. *Moore v. Ford Motor Co.*, 332 S.W.3d 749 (Missouri 2011).  In *Moore*, the trial court had granted a defense motion for a directed verdict on failure to warn, but the Supreme Court remanded the case. *Id.*  The court found that

> not only did the Moores testify that they did not know the Explorer seats yielded
> rearward for persons of Mrs. Moores' weight much more readily than for persons
> of normal weight, they went further by presenting evidence that had they read a
> warning before purchase, they would not have purchased the Explorer, and had
> they learned of it later through reading the manual, Mr. Moore would have done
> everything in his power to prevent his wife from riding in the Explorer. This
> causation theory is straightforward, not speculative, and does not offend
> reasonable concepts of proximate cause.

*Id.* at 764. Similarly, here, the Baracks did not know the side curtain airbags would not deploy

in certain rollovers and they testified that had they read such a warning before purchase, they

would not have selected the Odyssey. The trial record is more than sufficient to present the

failure to warn claim to the jury.

Defendant's argument that the plaintiffs must show <u>not</u> that they would not have used the

product but, instead, that they would have used it <u>differently</u> is unsupported, novel and radical. It

is contrary to Connecticut law, which requires only that the harm would have been avoided had

the proper warnings been provided. Conn. Gen. Stat. Ann. § 52-572q(c). Honda cites decisions

that in no way support its argument. In *Haesche v. Kissner*, 229 Conn. 213 (1994), the allegedly

defective product, a BB gun, came packaged in a box that set forth the exact risks that the

plaintiff suffered – injury from being hit by a BB – but plaintiff nevertheless argued that the

seller had not adequately advised of the BB gun's weapon-like propensity. The trial evidence,

however, revealed that the child who fired the BB gun was familiar with the mechanics of the

BB gun, that he knew it could shatter glass and kill small animals, that he had previously been

injured by a BB, that he knew it could injury a person's eye (the exact injury at issue in the case)

and that on other occasions he had taken precautions to avoid that injury. *Id.* at 219 – 220. The

child who fired the BB gun even testified that he had been instructed precisely on the use and

dangers of the BB gun, and was told he was not to point it at anyone. *Id.* at 220. It is hardly a

surprise that in light of such overwhelming evidence that the BB gun user was fully advised of

the exact risk that presented itself, the court concluded that the plaintiff could not establish that a different warning would have caused the item to be used in another manner.

Similarly, the facts in *Danise v. Safety-Kleen Corp.*, 17 F.Supp.2d 87 (D.Conn. 1998), are wholly distinguishable from the instant case. The plaintiff in *Danise* asserted that had he been adequately advised that an automotive parts cleaner and the solvents used with that machine could ignite by, among other things, static discharge, he would not have suffered severe burns sustained after the machine's solvent caught fire. The court, however, discredited the plaintiff's evidence. *Id.* at 96. Indeed, the *Danise* court concluded that the owner of the machine that the plaintiff used did not know the meaning of the warning that plaintiff's expert said should have been provided and, further, that even after the fire and knowing what caused the fire, the owner acquired another identical machine and used it with the same solvent that caught fire before. *Id.* That is, the proof was overwhelming that no warning would have prevented the fire and injuries.

Last, Honda's reliance on *Freitas v. Michelin Tire Corp.*, 2000 WL 424187, *3 (D.Conn. Mar. 2, 2000), is confusing, at best. In *Freitas*, plaintiff's human design expert's testimony regarding warnings was excluded on the basis of its unreliability and plaintiff's counsel therefore "conceded his strict liability warnings defect claim against the defendant[.]" *Id.* Here, of course, plaintiff has made no such concession, nor has defendant argued that only an expert could offer the adequate testimony on proximate cause in connection with the failure to warn claim. The issues in *Freitas* have no bearing on this case.

The testimony from the Baracks that if they had known that the rollover side curtain airbags would not deploy during a roll over, they would not have selected the car is sufficient to establish causation, as the inadequate warnings contributed to the plaintiffs' decision to select the Odyssey, relying on the absence of information about dangers during a rollover accident despite

the vehicle's airbags.  Under these circumstances, then, with actual evidence in the record from which a reasonable juror could infer that the Baracks would not have selected the vehicle had they been adequately advised, Honda's Rule 50(a) motion on the failure to warn charge must be denied.

### 2.  Design Defect

Honda's design defect arguments are entirely without merit.  In arguing for a directed verdict on the design defect claim, Honda incorrectly asserts that "it is well established" that expert testimony is required "in product liability cases involving claims of design defect." Connecticut caselaw is to the contrary.

Indeed, "[i]t is now well established under Connecticut law that a plaintiff may, under proper circumstances, prove the existence of a product defect without the benefit of expert testimony." *Debartolo v. Daimler Chrysler Corp.,* Superior Court, Complex Litigation Docket at New Haven, Docket No. X10 CV–03 0482725S, 2005 WL 3665602 (December 22, 2005) (40 Conn. L. Rptr. 503, 505) (*Munro, J.*) (finding that airbag failing to deploy in moderate impact accident was evidence of defect that could go to jury without expert).  It has long been true that "Connecticut courts ... have consistently stated that a jury may, under appropriate circumstances, infer a defect from the evidence without the necessity of expert testimony." *Potter v. Chicago Pneumatic Tool Co.,* 241 Conn. 199, 218 (1997); *see also Standard Structural Steel Co. v. Bethlehem Steel Corp.,* 597 F.Supp. 164, 183 (D. Conn.1984) (Connecticut law permits fact finder to infer a defect from circumstantial evidence); *Living & Learning Centre, Inc. v. Griese Custom Signs, Inc.,* 3 Conn.App. 661, 664, 491 A.2d 433 (1985) ("It is not necessary that the plaintiff in a strict tort action establish a specific defect as long as there is evidence of some unspecified dangerous condition. In the absence of other identifiable causes, evidence of

malfunction is sufficient evidence of a defect under § 402A of the Second Restatement of Torts");

*Kileen v. General Motors Corp.,* 36 Conn.Supp. 347, 349, 421 A.2d 874 (1980) ("[t]he fact

finder can find, where other identifiable causes are absent, that the mere evidence of a

malfunction is sufficient evidence of a defect").

In this case, though not required under Connecticut law, plaintiffs have offered credible

expert testimony to support a verdict in their favor on the design defect claim. This evidence

includes competent expert testimony and defendant's own documents demonstrating that when

designing the rollover side curtain airbag system, Honda made the conscious decision to adopt a

design that would not protect its customers in certain rollovers, including the relatively low

speed rollover involved in this case. *See, e.g.* Plaintiffs' Exhibit 21A (Honda design documents

showing its acceptance of a "Dead Zone" in its rollover sensing algorithm).

In discussing this "Dead Zone," plaintiffs' expert Chris Caruso characterized it as

unacceptable. Mr. Caruso testified that Honda's rollover side curtain air bag system design was

defective as a result of Honda's decision to allow for the "Dead Zone" when setting the vehicle's

rollover sensor's algorithm and /or its calibration. Moreover, Mr. Caruso, testified that this

defective condition caused the subject minivan's side curtain airbag to not deploy in the rollover

involving Mr. Barack. He further testified that this design defect caused Mr. Barack's injuries

because had the system been properly designed, it would have inflated the curtain barrier

between Mr. Barack and the roadway during the slow roll and would thereby have prevented the

ejection of Mr. Barack's left arm from the vehicle and his maiming. Finally, Mr. Caruso testified

that the state of the art at the time the system was designed was such that Honda could have

designed and implemented a sensor that would have sensed Mr. Barack's rollover. In fact, he

established that in the same time frame that Honda produced the rollover sensor with the "Dead

Zone," General Motors had designed and implemented a sensor that worked to protect drivers and passengers in all rollovers.

This testimony was not speculative. Mr. Caruso explained that Honda failed to ensure that its sensor recognized slow rollovers by ensuring that the system activated the side curtain airbags when the critical roll angle of 52 degrees was exceeded. He was further able to compare Honda's design decision, which allowed for the potential of non-deployment, to design decisions at General Motors, which designed and implemented a more robust sensor that worked in all rollover events.

Further relevant to the design defect claim is the expectations that Honda created in its consumers by virtue of its marketing and advertising efforts with respect to the Odyssey. As discussed above, Honda expressly touted its rollover curtain as making the vehicle particularly safe, while simultaneously designing the rollover curtain in an unsafe manner. Honda admits that it never advised its customers that the side curtain airbags were not designed to deploy in certain rollovers. Honda's failure to design the vehicle to the safety level it communicated to consumers further supports plaintiffs' design defect claims. Reasonable consumers would expect that the side curtain airbag barrier would protect them in all rollovers.

### 3. Manufacturing Defect

Honda suggested in court yesterday that plaintiffs had not submitted a jury instruction on their manufacturing defect claim or had perhaps otherwise had abandoned the claim. But there is only one cause of action for products liability under Connecticut law. *See* Connecticut General Statutes 52-572m. Under Connecticut law, a products liability claim "includes all claim for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing,

9

packaging or labeling of any product." *Id. (b).* There is no separate model jury instruction for

manufacturing defect claim. One model jury instruction encompasses all products liability

theories and that jury instruction was included in the proposed jury instructions submitted by the

parties as proposed Jury Instruction No. 8 on December 17, 2012. Plaintiff further proposed

model jury instruction 3:10-5, Product Liability – Malfunction Doctrine as Jury Instruction No.

12. This proposed jury instruction would permit the jury to infer from circumstantial evidence

that there was a defect without a direct evidence of a particular defect. Plaintiffs did not abandon

their manufacturing defect theory, have complied appropriately with the Court's pre-trial orders

and have submitted the appropriate jury instructions. Furthermore, plaintiffs contend that there

is sufficient circumstantial evidence to allow the jury to consider the theory.

One of the factual disputes in the case is the rate at which the Honda minivan rolled over.

The parties agree that the roll rate was relatively slow, but plaintiffs' accident reconstruction

expert put the roll rate higher than Honda's expert. If the Jury accepts the plaintiffs' theory of

the roll rate, then based on Honda's sensor design the side curtain airbag should have deployed

in Mr. Barack's roll – the fact that it did not would be circumstantial evidence of a malfunction –

its functioning did not conform to its design.

Plaintiffs' manufacturing defect claim is offered under the doctrine *res ipsa loquitor*, a theory

recognized under Connecticut law. Under Restatement (Third) of Torts: Prod. Liab. § 3 (1998), "It may

be inferred that the harm sustained by the plaintiff was caused by a product defect existing at the time of

sale or distribution, without proof of a specific defect, when the incident that harmed the plaintiff: (a) was

of a kind that ordinarily occurs as a result of product defect; and (b) was not, in the particular case, solely

the result of causes other than product defect existing at the time of sale or distribution."

In a manufacturing defect case, when direct evidence of precisely how or why the

product failed is not available, the "the malfunction doctrine … allow[s] a plaintiff to prove a

10

case by circumstantial evidence ...." *Fallon v. Matworks*, 50 Conn. Supp. 207, 217, 918 A.2d 1067, 1076 (Super. Ct. 2007).

While the evidence adduced during plaintiff's case as to a defect primarily goes to the design of either the algorithm or the calibration of the Odyssey (based on the testimony and materials showing that Honda designed a general rollover sensing system that intentionally would not deploy airbags in the case of slow rollovers) and the physical evidence suggesting that the Barack vehicle may have rolled at a rate as to place the roll in Honda's so-called "Gray" or "Dead Zone," there has also been evidence that the rollover occurred at a rate that even based on Honda's design it should have deployed. For example, Honda conducted one test of its rollover system in which the airbag deployed where the peak roll rate was approximately 102 degrees/second (the "Corkscrew Rollover"). At trial, testimony was presented the peak roll rates were above 102 degrees/second. Thus, if the jury determines that the peak roll rate in the subject rollover was above 100 degrees/second, and that roll rate was reached prior to the Odyssey hitting the ground, there would be no reason under Honda's algorithm for the airbag not to have deployed and the only explanation for the side curtain airbag failure to deploy would be a manufacturing defect. Under Connecticut law, when considering the possibility that the rollover was at a higher speed, the jury would be entitled to rely on the *res ipsa loquitor* theory in rendering its verdict on manufacturing defect. Given the evidence in the record that could support a finding of liability on the manufacturing defect theory, then, Honda's motion for directed verdict on this point must also be denied.

### 4. Conclusion

For all of the reasons set forth herein, and relying on the evidence admitted during the course of trial, including lay and expert witness testimony, exhibits and demonstrative evidence,

11

a reasonable jury could find for plaintiffs on theories of failure to warn, design defect and/or

manufacturing defect, and Honda's Fed.R.Civ.P. 50(a) motion for a directed verdict should be

denied in its entirety.


Dated: New York, New York
      May 23, 2014

                             Respectfully submitted,

                             KREINDLER & KREINDLER LLP


            By:    /s/ Andrew J. Maloney
                   Andrew J. Maloney (Bar No. CT15639)
                   750 Third Avenue
                   New York, NY 10017
                   amaloney@kreindler.com
                   (212) 687-8181

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Plaintiffs' Opposition to Defense Rule 50(a) Motion for a Directed Verdict was served via ECF and hand delivery on the 23rd day of May, 2014 upon:

James M. Campbell, Esq.
Michelle I. Schaffer, Esq.
Campbell Campbell Edwards & Conroy
One Constitution Plaza, Third Floor
Boston, MA 02129
(617) 241-3000
jcampbell@campbell-trial-lawyers.com
mschaffer@campbell-trial-lawyers.com
*Attorneys for Defendants*

_____/s/ Andrew J. Maloney_____
Andrew J. Maloney