UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| RON BARACK, | ) | |
| and DONNA MOORE BARACK, | ) | |
| | ) | |
| Plaintiffs, | ) | 09-cv-00565 (TLM) |
| v. | ) | |
| | ) | |
| AMERICAN HONDA MOTOR | ) | |
| COMPANY, INC., and HONDA | ) | |
| MOTOR COMPANY, LTD., and | ) | |
| HONDA MANUFACTURING OF | ) | |
| ALABAMA, | ) | |
| | ) | |
| Defendants. | ) | May 27, 2014 |
| | ) | |

## DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFFS' OBJECTION TO THEIR MOTION FOR JUDGMENT AS A MATTER OF LAW

The defendants, American Honda Motor Co., Inc., Honda Motor Co., Ltd. and Honda Manufacturing of Alabama, LLC (collectively as "defendants") hereby submit this Memorandum in Response to the Plaintiffs' Opposition to their Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(a). The defendants respond specifically to the plaintiffs' argument that they have preserved a claim that the side curtain airbag was defective in manufacture and that they are entitled to the application of the general malfunction theory of liability. Contrary to the plaintiffs' position, the general malfunction theory does not apply in this case because: (1) in complex cases like this, expert evidence is required to support a claim of a manufacturing defect, and the plaintiffs' have none; and (2) the plaintiffs' have no evidence to support the existence of a defect under a general malfunction theory of liability. Accordingly, the defendants' Motion for Judgment as a Matter of Law should be granted as to the manufacturing defect theory and the jury should not be instructed on the product

malfunction doctrine.  The defendants also address the plaintiffs' submission concerning the

failure to warn theory reiterating that they have presented insufficient evidence of proximate

cause.

## I.     LAW APPLICABLE TO MALFUNCTION THEORY OF LIABILITY

In only very limited circumstances, a plaintiff may use circumstantial evidence of a

non-specific defect to meet his burden of proof where all other identifiable causes of the alleged

malfunction have been eliminated.  See Metro. Prop. & Casualty Ins. Co. v. Deere & Co., 302

Conn. 123, 141 (2011) (plaintiff "must present sufficient evidence to negate a reasonable

possibility that something or someone besides the manufacturer caused the defect in the

product").  For the plaintiff to establish a *prima facie* case of a product defect under the

"malfunction" theory, he must present evidence establishing that "(1) the incident that caused

the plaintiff's harm was of a kind that ordinarily does not occur in the absence of a product

defect, and (2) any defect most likely existed at the time the product left the manufacturer's or

seller's control and was not the result of other reasonably possible causes not attributable to the

manufacturer or seller."  Id. at 139-40.

In some rare situations, it is possible for a plaintiff to prove his claim under the

malfunction theory using various forms of circumstantial evidence including evidence of the

history and use of the specific product; the manner in which the product malfunctioned; similar

malfunctions in similar products that may negate the possibility of other causes; the age of the

product in relation to its life expectancy; and the most likely cause of the malfunction.  See Id.

at 140-41.  However, the plaintiff is required to establish that the defect in the subject vehicle

existed at the time of its first distribution by the defendants *and* that there are no other possible

causes of its alleged malfunction.      Living & Learning Centre, 3 Conn. App. at 665-66;

O'Connor v. Gen. Motors Corp., 1997 WL 792996, at *5 (Conn. Super. Ct. Apr. 25, 1997) ("purely circumstantial evidence of a defect is enough to take a ease [sic] to a jury *provided* the plaintiff has introduced evidence as to two other matters: (1) . . . plaintiff must present evidence which would tend to negate causes for an accident other than a defect in the product; and (2) . . . plaintiff must present proof which would suggest that whatever defect might have existed was one introduced into the product by the defendant." (citation omitted) (internal quotation marks omitted)).[1]

A manufacturing theory of defect and a general malfunction theory do not apply in this case because the plaintiffs, through their experts, have never presented this case as premised on any theory of manufacturing defect in the side curtain airbag system, nor have they advanced any expert evidence at trial supporting an instruction on the general malfunction theory.

A. RELEVANT FACTS

The plaintiffs retained an airbag expert, Geoffrey L. Mahon, to offer opinions concerning the subject vehicle's side curtain airbag system. Mr. Mahon testified at a deposition that he could not identify any evidence of a manufacturing defect. Both Mr. Mahon's written report and deposition testimony advanced theories of design defect in the algorithm of the sensing system software, not a malfunction of a component or defect in manufacture. Exhibit A, Deposition Testimony of Geoffrey Mahon, p. 206: 23-24; 207; 208: 1-4. Mr. Mahon stated that "from a hardware standpoint, I don't think there's necessarily a need to change the

---

[1] The malfunction doctrine generally applies in cases where no direct evidence is available, such as when the product blows up, burns up or is otherwise severely damaged. See Fallon v. Matworks, 50 Conn. Supp. 207, 217 (2007)In this case, the subject vehicle was not destroyed or damaged beyond use. The vehicle was available for inspection and testing. Both of the plaintiffs' airbag experts inspected the vehicle and had the opportunity to test the subject vehicle's airbag sensors, and elected not to. Plaintiffs have still not identified a specific component that they allege to be defective under a manufacturing theory of defect. Contrast the availability of the evidence in this case with O'Connor, where the court acknowledged that the subject vehicle was unintentionally spoliated. 1997 WL 792996, at *1 (Conn. Super. Ct. Apr. 25, 1997).

3

hardware." Id. at p. 207. He continued that he did not "see anything that's, in principle, wrong with the hardware..." Id. at p. 208.    Mr. Mahon did not criticize the hardware and acknowledged that he thought, "the hardware is about what almost everybody uses anyway." Id. at p. 212-213. Rather, Mr. Mahon's opinions focused on a design defect theory, that the system should have been designed to trigger an airbag deployment in these factual circumstances.    Mr. Mahon conducted an inspection of the subject vehicle and took photographs during the inspection. Id. at p. 168: 24-25; 169: 1-9.    During discovery, Mr. Mahon took no steps to test the rollover airbag sensors, despite the vehicle's availability. Mr. Mahon offered no evidence that could be used to support a claim of defective manufacture or a general malfunction in the airbag system.

Mr. Mahon was subsequently replaced by plaintiffs' expert, Christopher Caruso, who testified at trial concerning his opinions of defect in the subject vehicle's side curtain airbag system. Mr. Caruso, the only expert to testify on behalf of the plaintiffs' at trial regarding the side curtain airbag system, confirmed that he could identify no evidence of a defect in the manufacture of the system. At trial, Mr. Caruso posited a theory of design defect in the algorithm or calibration of the airbag algorithm, not a malfunction of the airbag system. Exhibit B, Trial Testimony of Christopher Caruso, Day 4,

p. 113: 6-17. In trial testimony, Mr. Caruso conceded that he found no evidence of a manufacturing defect or malfunction:

Q:    And your take away from that is without a fault code for the SRS data, there was no manufacturing defect in that, in those sensors or in that system?

A:    None that was diagnosed by the electronic system, correct.

Q:    And you have no reason to believe that there's any hardware problem, or that the sensors were not working on the date of the collision, true?

4

A:     I can never rule it out, but I have no data to support that there was a
       defect, based on any manufacturing or quality issue.

Q:     And you have no evidence to suggest that the sensors were working in
       any way other than the way they were supposed to work, true?

A:     Correct, there is no evidence to indicate otherwise.

Id. at p. 112.  Thus, Mr. Caruso has stated that he has observed no evidence of a manufacturing

defect.  At trial, Mr. Caruso advanced a design defect theory, not that the components or system

malfunctioned.     The plaintiffs' experts, prior to trial and at trial, have failed to offer any

credible evidence of a defect in manufacture, or that some component of the side curtain airbag

system malfunctioned. Mr. Caruso testified at trial that the vehicle was made available to him

and he conducted an inspection of the vehicle.     Id. at pp. 54-55.  Mr. Caruso had the

opportunity to test the rollover sensors to support a theory of malfunction or defective

manufacture, but did not take steps to do so.

       As made clear by their testimony both prior to and during trial, Mr. Caruso and Mr.

Mahon have not offered any opinion or proffered any evidence concerning the existence of

any manufacturing defect in the subject vehicle or that the defendants were negligent in

manufacturing the vehicle.  As set forth below, absent any credible evidence of manufacturing

defect or malfunction, the plaintiffs are not entitled to proceed to the jury under these theories

of liability.

B.  ARGUMENT

### 1.  In Cases Such as This, Expert Evidence is Required to Prove the Existence of a Manufacturing Defect – the Plaintiffs Have None.

       Even though the plaintiffs' expert Mr. Caruso testified during trial, the plaintiffs still

lack any expert testimony that would support or corroborate a manufacturing defect or

malfunction in the side curtain airbag system.  Without expert testimony of any alleged

5

manufacturing defect in the side curtain airbag system the plaintiff's allegations are insufficient

to remove the theory of a manufacturing defect from an impermissible "realm of speculation."

See Metro. Prop. & Casualty Ins. Co., 302 Conn. at 141; Fallon, 50 Conn. Supp. at 220 (noting

that a liability expert is required to establish that specific components or related mechanisms

were defective). Here, the plaintiffs do not, and cannot, support any allegations of a specific

defect in manufacture or general malfunction by competent expert testimony or otherwise.

Despite Mr. Caruso's trial testimony, there is no expert evidence that the subject vehicle was

defective in its manufacture or that the defendants were negligent in the manufacture of the

subject vehicle. Accordingly, the defendants' motion for judgment as a matter of law should be

granted.

## 2. The General Malfunction Theory Does Not Apply to This Case

The plaintiffs cannot rely on a general malfunction theory to support a claim of

manufacturing defect, because they have no evidence whatsoever to support the existence of

such a defect. At trial, the plaintiffs have only proffered evidence to support a theory of design

defect; no evidence of a manufacturing theory or malfunction has been advanced or even

suggested by the evidence.

This case is not one of the rare circumstances where the general malfunction theory

applies. In cases where plaintiffs have been allowed to proceed on a general malfunction

theory, like Liberty Mutual Insurance Co. v. Sears Roebuck & Co., the focus is placed on a

malfunction that would not happen in the ordinary course but for a defect. In Liberty Mutual,

that product was a color television that caught fire and damaged the plaintiff's property within

six months of its purchase. 35 Conn. Supp. 687, 688 (Super. Ct. 1979). In Living & Learning

6

Center, the product was a free standing illuminated sign that, without interaction with any other forces, bent parallel to and was hanging a few feet above the ground. 3 Conn. App. at 663-64.

Both situations are entirely unlike the complex factors that determine the deployment of a rollover side curtain airbag. It is generally understood that new televisions are not meant to catch fire and that new illuminated signs are not meant to bend and fall on their own – therefore, an inference of malfunction is allowed. Unlike those examples, in this case we are presented with a complex airbag system that employs an algorithm that is designed to factor in multiple variables to determine whether to deploy in a specific vehicle accident, including lateral velocity, roll rate, and roll angle. The system must make calculations early in the accident event to determine whether an airbag deployment is necessary or would be unnecessary and potentially harmful to occupants. The non-deployment of an airbag is not in and of itself evidence of a defect and is not the type of factual circumstances contemplated by the general malfunction doctrine. For this reason, courts require expert proof of defect in claims involving airbag systems. Koutsoukos v. Toyota Motor Sales, USA, Inc., 2011 WL 2177095, at *8 (Conn. Super. Ct. May 11, 2011) aff'd sub nom. Koutsoukos v. Toyota Motor Sales, U.S.A., Inc., 137 Conn. App. 655, 49 A.3d 302 (2012).

Importantly, the plaintiffs cannot rely solely on circumstantial evidence such as the accident itself, to establish the existence of a defect. Metro. Prop. & Casualty Ins. Co., 302 Conn. at 136 ("To allow such a speculative inference solely from the fact of an accident, when manufacturers and sellers no longer have exclusive control of the product, would essentially convert them into insurers of their products; this is contrary to the purposes of our product liability laws."). Thus, this requires the plaintiff to put forth evidence that rules out other possible causes of the product's alleged malfunction. See Living & Learning Centre, 3 Conn.

App. at 665-66.  "[T]he burden on the plaintiff is only to negate those causes not in the control of the defendant which might reasonably have led to the accident," and they have failed to do so.  O'Connor, 1997 WL 792996 at *5 (quoting Stewart v. Ford Motor Co., 553 F.2d 130, 137-38 (D.C. Cir. 1997)).

The malfunction theory is not appropriate in cases, such as this one, where the plaintiffs have offered evidence to support other possible theories of liability.  The plaintiffs cannot meet the very standard that the malfunction theory requires – that they negate other reasonable possible causes of the injuries – because they have advanced their own separate design theory with expert evidence.  When the plaintiffs fail to negate other possible causes, they are precluded from proceeding under a general malfunction theory.  See Hunter v. Mazda of Milford, 1999 WL 179642, at *4 (Conn. Super. Ct. Mar. 2 1999) (trial court precluded the use of the malfunction theory because the plaintiff did not present evidence that the tire blow out was not due to something other than an unspecified defect in the tire.) Like Hunter, the malfunction theory is not available to the plaintiffs because they cannot prove that there are no other reasonably possible causes of the nondeployment.  Metro. Prop. & Casualty Ins. Co., 302 Conn. at 139-40; Kroll, 2000 WL 486834 at *2; see Fallon, 50 Conn. Supp. at 217.  There is no basis for the assertion of a general malfunction theory when the plaintiffs' expert has testified at trial that Mr. Barack's injuries were caused by a design defect in the subject airbag system. The plaintiffs' cannot simply rely on the fact of the accident itself to support an inference of a malfunction. This is not the intended purpose of the general malfunction doctrine.  It is not meant to be a fallback option for plaintiffs in the event their alternative theories are unavailing.

Based upon the undisputed facts, the plaintiffs lack reliable evidence of a malfunction in the subject vehicle's airbag system attributable to the defendants, and have failed to provide

any evidence to eliminate other reasonably possible causes of Mr. Barack's enhanced injuries, and in fact have presented their own alternative theories based on a design theory.   The fact that the airbag did not deploy during the accident event does not alone establish the existence of a defect or a dangerous condition in the vehicle and does not warrant an instruction on the general malfunction theory.

## II.  PLAINTIFFS HAVE FAILED TO PROFFER EVIDENCE OF PROXIMATE CAUSE UNDER A FAILURE TO WARN THEORY

The plaintiffs' reliance on Fraser v. Wyeth in support of their failure to warn theory is misplaced.  Under Connecticut law, the plaintiff bears the burden to prove proximate cause, an unbroken sequence of events that tied his injuries to the [defendant's conduct].[2] Weigold v. Patel, 81 Conn. App. 347, 355 (2004) (citation omitted, alteration in the original).  To establish proximate cause as to failure to warn claims, a plaintiff must prove that harm would have been avoided if an adequate warning had been provided.  See DeJesus v. Craftsman Mach. Co., 16 Conn. App. 558, 574 (1988).  In Fraser, the court determined that there was sufficient evidence that a reasonable jury could find that the plaintiff's treating physician would have modified his recommendation to the plaintiff to proceed on that theory.  857 F. Supp. 2d 244, 255 (D. Conn. 2012).  If the testimony was believed, a reasonable jury could find that the plaintiff would not have taken the drug and would have therefore avoided the harm of the drug's side effects, in this case breast cancer.

This case is distinguishable from Fraser because the plaintiff in Fraser could more easily establish proximate cause by showing that she could have avoided the harm alleged – breast cancer – had she elected not to take the drug.  In this case, the plaintiffs' proof of proximate cause  is not as clear cut as in Fraser; showing merely that they would not have

_____

[2] The defendants do not see the need to respond to the plaintiffs' use of cases interpreting statutory law from other jurisdictions, as they would clearly not apply in this case.

purchased the subject vehicle is insufficient.   The plaintiffs are required to prove that Mr. Barack's hand injuries would not have occurred but for the lack of warning.   The plaintiffs have advanced no credible evidence that Mr. Barack's hand would have been protected in the subject accident had he elected to purchase and was operating another vehicle at the time of the accident.   No evidence has been adduced by the plaintiffs that there existed another vehicle in 2006 that (1) came equipped with a rollover side curtain airbag; (2) which would have deployed the side curtain airbag in the subject accident event; and (3) employed a rollover side curtain airbag that would have prevented the injuries to Mr. Barack's hand.   The plaintiffs' claims that they would not have purchased the subject vehicle are simply insufficient as a matter of law as to proximate cause; the law requires the plaintiffs to prove that they would not have suffered the alleged harm.   See DeJesus, 16 Conn. App. at 674.   Absent credible evidence concerning proximate causation as to their failure to warn theory, no reasonable jury could find in favor of the plaintiffs.

## CONCLUSION

For the foregoing reasons, and those set forth in their Motion, the defendants

respectfully request pursuant to Fed. R. Civ. P. 50(a) that the Court enter judgment as a matter

of law for defendants on the theories of defect in manufacture, design, and warnings.

> HONDA MANUFACTURING OF ALABAMA, LLC,
> AMERICAN HONDA MOTOR CO., INC., and
> HONDA MOTOR CO., LTD.
>
> By their Attorneys,
>
> /s/ Michelle I. Schaffer
> James M. Campbell (Juris # 09276)
> Michelle I. Schaffer (Juris # 15607)
> Campbell Campbell Edwards & Conroy
> One Constitution Center
> Boston, MA 02129
> Tel. No. (617) 241-3000
> Fax No. (617) 241-5115
> jmcampbell@campbell-trial-lawyers.com
> mschaffer@campbell-trial-lawyers.com

### CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2014, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

> Andrew J. Maloney, Esquire
> Noah H. Kushlefsky, Esquire
> Kreindler & Kreindler
> 750 Third Avenue
> New York, NY 10017

> /s/ Michelle I. Schaffer
> Michelle I. Schaffer